# Case No. 13,974.

## THOMPSON v. PHILLIPS.

### [Baldw 246.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1830.

**EXECUTION — SALE OF LAND UNDER — MARSHAL'S DEED—LIEN OF JUDGMENT—CONSTRUCTION BY STATE COURT.**

1. Where a levy and inquisition were set aside by the court, but the fieri facias not set aside, a new inquisition was held and returned with the fieri facias and levy annexed, condemning the property; a venditioni exponas was issued, the property sold and deed acknowledged by the marshal in open court: *Held*, that the validity of the sale was not affected by the want of an alias fieri facias, or a new levy.

[Cited in Dudley's Case, Case No. 4,114; Dawson v. Daniel, Id. 3,669.]

2. The acknowledgment of a sheriff's or marshal's deed is a judicial act, which cures all defects in process or its execution, which the court have power to remedy by their order.

3. If the court has jurisdiction of the case, the parties, and power to order the sale by a venditioni exponas, a sale so made, and a deed acknowledged, cannot be set aside in a collateral action.

4. An objection to such sale must show the want of power in the court

5. Irregularities must be corrected by the court which issues the process.

6. Erroneous proceedings must be reversed on a writ of error, or they are binding.

7. The state law of 1798, limiting the lien of judgments, is a law of property and title applicable to judgments in this court, of record before its passage.

8. This act does not admit of the same construction as the statute of Westminster, giving a scire facias after a year and a day, there being no analogy between them as to the mischief or remedy.

9. A capias ad satisfaciendum taken out and returned non est inventus, does not preserve the lien of a judgment without a scire facias within five years from its entry.

10. As a general principle, an elder judgment is entitled to prior satisfaction; a sale under a younger judgment does not affect the prior one, or prevent a sale under it so as to pass the title; and if the question was open, this court would give such construction to the fourth section of the state law of 1705.

11. But the rule established by the supreme court of this state is otherwise, and will be adopted as the construction of a state law.

12. That a sale by a sheriff, under a judgment in the court of common pleas in this state, passes a title to the purchaser discharged from a prior judgment in this court, either against the defendant, as whose property it was sold, or against any persons from whom it was conveyed to the defendant.

[Cited in brief in Dazet v. Landry (Nev.) 30 Pac. 1065.]

13. The settled construction of a state law, by the highest court of the state, is considered by the federal courts as their rule of decision under the thirty-fourth section of the judiciary act, such construction being taken as a part of the law.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015; Cropsey v. Crandell, Id. 3,418; Ward v. Chamberlain, Id. 17,152; New England Screw Co. v. Bliven, Id. 10,156; Mitchell v. Lippincott, Id. 9,665; Ex parte McNiel, 13 Wall. (80 U. S.) 243.]

[Cited in Andrews v. Doe, 6 How. 554.]

This was an action of ejectment for a house and lot in Philadelphia. Both parties claimed under Charles Hurst, who was seised in fee of the premises in May, 1775, subject to a ground rent. The plaintiff claimed title by a deed from Charles Hurst to Edward Evans, dated 18th of May, 1775, and a deed of the 21st of August, 1787, from Evans to Charles Hurst. On the 11th of April, 1791, a judgment was obtained in this court, by Thomas and John Wilson against Charles Hurst, under which the premises in question were sold by the marshal, and by a deed acknowledged in court on the 11th of April, 1825, conveyed by him to Elizabeth Hess, who, on the 26th of March, 1826, conveyed the same to the lessor of the plaintiff. The defendant claimed title by a deed from Charles Hurst to John Lang, dated 1st of February, 1795, and a regular chain of intermediate deeds to Alexander Hemphill, against whom a judgment was entered in the court of common pleas of Philadelphia county, on the 23d of May, 1814, under which the premises were sold by the sheriff; and by deed acknowledged in court on the 22d of May, 1815, conveyed by him to John B. Newman, under whom the defendant is in possession. John Lang, and those claiming under him, have been in possession of the premises from the date of the deed from

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

Charles Hurst, in 1795, and made valuable improvements thereon. On the judgment of Wilson v. Hurst. in 1791,[2] several writs of execution and venditioni exponas had issued, on which sales had been made by the marshal, deeds acknowledged and given to the respective purchasers; but no levy was made on the premises in question before April 1823, though they were bound by the judgment at the time of the conveyance by Hurst to Lang.

Four questions were raised on the trial: 1. On the validity of the marshal's sale and deed to Elizabeth Hess, which was alleged by the defendant to be void for want of a levy. 2. Whether the lien of the judgment of Wilson v. Hurst, on which the plaintiffs rested their title, was not lost by omitting to revive it, pursuant to the provisions of the state law of 4th of April, 1798. 3. Whether the sheriff's sale on the judgment against Hemphill, did not discharge the property sold from all existing liens, and turn Wilson over to his action against the sheriff for the purchase money. 4. Whether the plaintiff is not barred by the lapse of time, from 1795 till 1823, during which the purchasers under Hurst were in possession, and no levy made on the premises; and whether the law will not presume the judgment to have been released, so far as it could affect the property thus held.

The first question was made on the admissibility in evidence of the marshal's deed to Mrs. Hess, and was elaborately argued on both sides, the court admitted the deed to be read without delivering any opinion, the same point arose as to its effect, and the argument was the same in substance as was made on the objection to its being read to the jury. On the first question it is unnecessary to refer to the proceedings on Wilson's judgment prior to March, 1823. On the 31st of March, 1823 a fieri facias for residue was issued, returnable at April term, on which there was a levy on the lot in question and other property, an inquisition and condemnation returned; on the 19th of April, Mr. Todd, on behalf of Mr. Newman, under whom the defendant holds, obtained a rule to show cause why the levy and inquisition should not be set aside, on the 30th of April the rule was made absolute by the court. No fieri facias appears to have been taken out afterwards, none was produced, nor was there any entry on the record of one having issued. But the plaintiff produced an inquisition, taken on the 18th of October, 1823, to which the fieri facias of March was attached with a levy thereto annexed, embracing the same property as was before levied on. The property levied on was condemned by the inquest, the fieri facias and a levy were returned with the inquisition on the 20th of October, 1823, as appeared by an indorsement thereon in the pencil mark of the clerk of the court. The plaintiff also produced a notice of the holding the inquisition, which was served on Mr. Todd, who attended at the first day, but not at the adjournment on the 18th, as testified by the marshal. Mr. Todd on being called, testified, that he was not present at the inquisition; having discovered that the marshal had no writ, and consulted Mr. Binney, they concluded that it was not necessary. At the time of the sale by the marshal, Mr. Todd, on behalf of Mr. Newman, gave notice that the validity of the sale would be contested for want of a fieri facias and levy.

On the second question arising under the law of 1798, the following entries on the record are all which are material to be stated. The judgment of Wilson v. Hurst [Case No. 17,808], was entered on the 11th of April 1791. a capias ad satisfaciendum was taken out on the 19th of September, returnable to October term, 1791—returned non est inventus; no further proceedings took place till the 23d of April, 1805, when a scire facias, returnable to October term, 1805, was issued against Charles Hurst, and returned served. No notice appears to have been served on the terre tenants, though the lot was then, and had for ten years been in possession of persons claiming by purchase from Charles Hurst. The first section of the act of 1798 declares, "that no judgment now on record in any court within this commonwealth, shall continue a lien on the real estate of the person against whom the same has been entered, during a longer term than five years from and after the passing of this act, unless the person who has obtained such judgment, or his legal representatives. or other person interested, shall, within the said term of five years, sue out of the court wherein the same has been entered, a writ of scire facias to revive the same." The third section provides, "that all such writs of scire facias shall be served on the terre tenants or persons occupying the real estates bound by such judgments, and also where he or they can be found, on the defendant or defendants, his or their feofee or feoffees, or on their heirs, executors or administrators." 3 Smith's Laws, 331, 332.

The third question arising on the effect of the sheriff's sale in 1814, 1815, depended on the construction of the act of 1705, for taking and selling lands on execution pursuant to judgments and mortgages. The regularity of the sheriff's sale on the judgment against Hemphill, was not questioned; its effect turned on the fourth section of that law, which declares, that lands sold under execution shall be held and enjoyed by the purchaser, "as fully and amply, and for such estate and estates, and under such rents and services, as he or they for whose debt or duty the same shall be so sold or delivered. might, could or ought to do, at or before the taking thereof in execution." 1 Smith's Laws, 59.

The fourth question turned on the general principles of law, applicable to legal presumptions from the lapse of time.

[2] [Case No. 17,808.]

Mr. Sergeant, for plaintiff, on the first question.

The plaintiff's claim is founded on a marshal's deed, duly acknowledged after a regular sale on a venditioni exponas, issued after a fieri facias, levy and an inquisition of condemnation. The defendant had notice of the levy, inquisition, and all subsequent proceedings, but made no objection to the acknowledgement of the deed, though he had every opportunity of doing so. Had he made his objections in time, the sale, if illegal, might have been set aside without prejudice to the purchaser; now having paid the purchase money, the land and money are lost if the objection prevails. Such conduct may make the plaintiff's title good, though it would have been bad otherwise. Willing v. Brown, 7 Serg. & R. 467. The only defect relied on is the want of a new fieri facias and levy, after the first levy had been set aside on the motion of Mr. Todd. The court were not asked to set aside the fieri facias; none of the exceptions applied to the levy on the property in question, and if it were necessary to support the subsequent proceedings, the court would amend their order setting the levy aside, so as to set aside such parts only as come within the exceptions, or would so construe the entry as not to affect such part of it as was necessary to support the subsequent proceedings. A fieri facias returned with a levy is properly executed, the setting aside the levy has no effect on the fieri facias, its efficacy remains, and its exigency may be performed after the return day; the law is settled that an inquisition may be held at any time afterwards, and there is no decision that a levy may not be attached to the fieri facias after the return. In Burd v. Dansdale's Lessee, 2 Bin. 80, there was no levy in fact, none was attached to the proceedings, and the venditioni issued contrary to the order of the court setting the levy aside, which was to levy anew, and which was not done. Here was a levy in fact, attached to the fieri facias, returned to the court with the inquisition before the venditioni issued; the defendant's objection is thus narrowed down to the want of an alias fieri facias, the only use of which would be an accumulation of costs. In Miller v. Milford it is settled, that an alias fieri facias is not necessary where the act can be done on one which is returned. 2 Serg. & R. 35.

A levy on land, under the execution law of this state, is different from a levy on goods, no seizure or entry on the land is requisite, it may be done on paper, by the sheriff designating the property on which he intends to hold the inquisition; the law requires notice of the time and place of holding the inquisition, which must be on the premises levied on, if requested by the party. The levy is a mere formal act, one which must precede the inquisition, in order to ascertain the rents and profits of the property selected to satisfy the execution; it is of no importance to the defendant, whether this selection is made by the sheriff before or after the return of the fieri facias. If the land is improved it cannot be sold under the fieri facias, there must be an inquisition finding the rents and profits insufficient to pay the incumbrance on it in seven years; this is the important act on which the power of the court to order a sale depends, and the only one by which the defendant can be injured; if this can be done after the return of the fieri facias, a fortiori, the mere act of form preparatory to it can be. When the sale is ordered, it is not on the fieri facias, but a new writ of venditioni exponas; the levy returned with the inquisition is a part of it, when or how it is made is no matter of inquiry, it is enough if the court see that the inquest have acted on the specific property. There must be a levy in form, but it will always be presumed in support of proceedings which depend upon it, unless the contrary appears. 11 Johns. 517; 17 Johns. 13, 17; 19 Johns. 345. The venditioni issued in this case is a recognition by the court of the existence of such a levy as authorized the inquisition; the omission to take out an alias fieri facias was, if any defect, a mere irregularity, or at the most an error in the proceedings of the court, which was cured by their judicial act in receiving the acknowledgement of the marshal's deed. Their proceedings are good till reversed, being voidable only if erroneous and not valid, the title of a purchaser is not affected by the reversal, by the principles of the common law, which are affirmed in the provisions of the act of assembly of 1705. 1 Smith 61. The defendant obtains restitution only of the money for which the property sold. The purchaser is also protected though the judgment under which he buys is fraudulent. [Simms v. Slacum] 3 Cranch [7 U. S.] 306.

The alleged defect in this proceeding being one of mere form, in a matter which the consent of parties could cure, and of which the defendant could have availed himself, as he had full notice, he shall be deemed to have assented to the levy on the old fieri facias, or to have waived the irregularity; the time is passed when he ought to be heard, as his silence has led to the sale and the payment of the money by the plaintiff; the case thus comes within the principle of Willing v. Brown. But there is neither irregularity nor error in the proceeding, the court had complete jurisdiction of the case, the parties, and full power to order a sale of the property: their acts are reversible for irregularity only by themselves on motion, or by a superior court on a writ of error; they will be presumed to have done what they had power to do, and to have done every thing necessary to bring the power to sell into action. After this power has been exercised their proceedings cannot be examined collaterally on any other ground

than the want of jurisdiction. Thompson v. Tolmie, 2 Pet. [27 U. S.] 57, 162; M'Pherson v. Cunliff, 11 Serg. & R. 431; 11 Mass. 221. The want of an alias fieri facias, or the time of making a levy, is not a thing which affects jurisdiction or power; the mandate of the writ is not to levy or hold an inquisition, it is to make the money out of the land; the power to hold the inquisition after the return of the fieri facias continues in force, the levy is a mere preparatory act, which does not, as in the case of chattels, give the sheriff any right of possession or property. The fieri facias was the authority to the marshal to do all acts preparatory to a venditioni, he returned a levy which was good except in two particulars, for which it was set aside, he then strikes from the levy the objected matter, attaches the remainder to the fieri facias, and holds the inquisition. Thus connecting what had been done before the return, with what followed, the whole proceeding is strictly regular, according to the principles settled in 2 Serg. & R. 161, 162, and 8 Serg. & R. 380. The direct order of the court would cure any irregularity as to the time of levy or sale, the sheriff may sell after the return of the venditioni if the land is put up on the return day (2 Bin. 80; 1 Serg. & R. 92), or during the first week of the term, if there is an usage to that effect in the county (10 Serg. & R. 261). Here the execution was begun to be executed before the return. It was defectively done in part, when the defect was remedied. The subsequent acts of the marshal become connected with the first, so as to make a good and perfect levy for all the purposes of the law. But the conclusive answer to all objections to a sheriff's sale, which do not reach the jurisdiction and power of the court, is that they are cured by the acknowledgement of the deed; this is a judicial act, a judgment affirming all previous proceedings, which remains binding on all parties till reversed.

On the second question. Independently of the act of 1798, the lien of a judgment continues till satisfied by payment, or such a case arises as from length of time raises a presumption of payment, which the jury may find on a plea of payment. In this case the proceedings on the judgment of Wilson, preclude such presumption. It was of record, every person who could be affected by it was bound to take notice of it, it bound all the real estate of the defendant, Hurst, in the district for twenty years; whether the present defendants had notice, in fact, or not, the law presumes they had notice of the judgment, and all its consequences, as of a deed duly recorded. The words of the law show that it was so viewed by the legislature, in the preamble "suffering judgments to remain a lien an indefinite length of time," and the old law prevails in all cases which are not embraced by the provisions of this act. It had been settled by the supreme court in 1809, that if an execution has

issued within a year and a day from the entry of the judgment or stay of execution, so that the plaintiff could have an alias execution, without a scire facias under the statute of Westm. II., the judgment remains a lien without a scire facias under the act of 1798. Young v. Taylor, 2 Bin. 218. Though the fieri facias is not returned, the judgment is kept alive by the entry of continuances on the roll with the entry of vice comes non misit breve, and an alias fieri facias has thus been held good after eleven years from the issuing of an oiginal not returned. Lewis v. Smith, 2 Serg. & R. 160. The court construe the act of 1798 by the rules applied in England to the statute of Westminster. Any execution which shows that the money was not paid when it was issued, rebuts the presumption of payment after the year and day, saves the necessity of a scire facias, and authorizes an alias. 1 Archb. Prac. 256; Pennock v. Hart, 8 Serg. & R. 376. As a capias ad satisfaciendum issued on this judgment within the year and day, the case comes within the settled construction of the law of 1798. But this law does not apply to the courts of the United States, they are not courts of record in this commonwealth, nor did the legislature ever intend to interfere with their judgments, over which, or the proceedings of the court, they have no control. This judgment when entered, had by the laws then in force a lien indefinite as to time, which no state law can diminish or affect; state laws prescribing rules of title and property are binding in this court, but this law prescribes the issuing of certain process on judgments, in order to continue their lien, it is therefore a process act not binding on this court. Wayman v. Southard, 10 Wheat. [23 U. S.] 20; Bank of the United States v. Halstead, Id. 51. Though it has been in force for more than thirty years, it has never been acted on or adopted in this court; in the only case which has arisen under it, it was held not to apply between judgment creditors, but only to purchasers and mortgagees, for whose protection and security it was passed. Hurst v. Hurst [Case No. 6,931]. In that case this law was set up by Wilson, the plaintiff, in the judgment now before us, to bar a previous judgment obtained by Brownjohn in the supreme court of the state, who, as was alleged, had lost his lien for the want of a scire facias. The contest was between that judgment and the present one, which was entitled to the proceeds of a sale by the marshal, of the property of Charles Hurst; the court directed the payment to be made to Brownjohn, because the act of 1798 did not protect Wilson's judgment. As this is a decision of this court on the judgment which is the foundation of the plaintiff's title in this case, it is conclusive upon it, so far as depends on the act of 1798. The law of this court has not become changed by the subsequent decision of the supreme court in 3 Bin. 337, constru-

ing the law to apply between judgment creditors. Had it been on a question of property or title to land depending on the law of the state, which had not been construed by the supreme court of the state, the rule in the federal courts is to adhere to their construction, though a contrary one may be afterwards given by the courts of the state, as in Huidekoper v. Douglass, 3 Cranch [7 U. S.] 1, &c. Since the decision of that case, there has been a radical difference between the federal and state courts respecting the title by warrant under the law of 1792.

On the third question. The plaintiffs in the judgment of Wilson v. Hurst [Case No. 17,808], are foreigners, who have a right to demand in this court, the assertion of their rights by the law of the federal courts, as they existed at the rendition of the judgment in their favour. The conveyance by Hurst could then vest no title, not subject to this judgment, until it is paid. Wilson could not be affected by any proceedings in the state court, of which he had no notice, nor was he bound to inquire into their proceedings, unless in some way brought in by notice. He had a lien on this property, which Charles Hurst could not divest or impair by deed, or the confession of judgment; this lien could be enforced by a sale under the judgment, the effect of which is to pass the title of Hurst, as he had it at the time of the judgment rendered. The deed of the marshal, is his deed by operation of law, so declared by the supreme court of the state, as the result of the sale and acknowledgement of the sheriff's deed. By the fourth section of the act of 1705, the purchaser holds the same estate as the defendant in the execution, but no greater, it is subject to all incumbrances which were upon it, at the time of the judgment on which it is sold, no other estate would pass by the deed of the defendant, and the sheriff cannot convey what the defendant could not. The acts of the law are substituted for the act of the defendant in the judgment, in order to pass against his consent, the estate he held, to the same extent to which he could convey it voluntarily; the power of the sheriff is made precisely what the power of the defendant was, when the judgment was rendered, which put the sheriff, by operation of law, in his place for the purposes of a sale, but gave him no power to divest a prior lien. That the prior lien gives the right to prior satisfaction, is an universal principal of law, it can be divested by no process or sale under a subsequent incumbrance, the right as acquired by the purchaser, remains subject to the prior lien, under which the property bound may be sold and held, notwithstanding a former sale under a junior incumbrance. Scott v. Rankin, 12 Wheat. [25 U. S.] 177. This principle covers the present question, and the decision of the supreme court is a rule for this, though state courts disregard it; the jurisdiction of the federal courts is complete, per

se, and cannot be affected by any proceedings in state courts, which tend to impair or take away the lien and effect of their judgments.

On the fourth question. There is no ground for any legal presumption of payment, satisfaction or release of this judgment; the plaintiff has been guilty of no laches, or done any act of which the present defendant can complain, or of which he had not express notice in time to avail himself of it. He stands in no better situation than Lang, under whom he purchased would, if now in possession. When Lang purchased in 1795, the judgment of Wilson was undoubtedly a lien on the property, of which Lang was bound to take notice, and the law presumes him to have the same notice, as of a recorded deed from Hurst to Wilson. Lang improved at his peril, he ran the risk voluntarily, and those under him down to the present defendant, have continued to remain inactive till this suit. In October, 1823, Newman knew of the levy and inquisition on this lot, he never asserted any claim to be exempted from its effects, but rested on the technical objection to the fieri facias and levy. If under such circumstances the principles of a court of equity could be applied, he would now be prevented from setting up any presumed release, his silence and acquiescence would bind him. On the other hand, the judgment creditor has proceeded with all the diligence which the law required, he has acted by the order and under the process of the court, who have given a judicial sanction to every thing done, by receiving the acknowledgement of the marshal's deed. After this act, the court can make no presumption which would in any manner invalidate the deed or impair its legal effect; for that would be to presume in opposition to their own judgment, affirming all that had been done, which is tantamount to a prior order. A release of one defendant in a judgment, or of a part of the property bound by it, would be a release of the whole, which cannot be presumed without affecting the judgment as to other parts, to which there can be no pretence of abandonment. A partial release can now be given under the act of 1820, which alters the common law and must be confined to the case provided for. There is therefore no circumstance to authorize the presumption, that the judgment creditor has done any act which can deprive him of the legal effects of his judgment, or affect injuriously the rights of a purchaser, who has paid his money on the faith of judicial proceedings deliberately sanctioned by the court, in receiving the acknowledgement of the marshal's deed.

Mr. Todd and Mr. Binney, on the first question, for defendant.

As no new fieri facias issued after the April term, 1823, all subsequent proceedings under the judgment of Wilson are void, and

the fieri facias previously issued was returned, and all proceedings under it set aside. It must, therefore, be considered as not having been executed, or its execution as not having been begun before the return day, and comes within the well established rule, that if no act is done towards the execution of a fieri facias, before the return day, nothing can be done afterwards, though, if execution be begun before, it may be completed after the return. 6 Mass. 20; 2 Caines, 244. After the setting aside the former levy, no new one could be made, as the marshal had no writ to authorize it, this brings this case within that of Burd v. Dansdale's Lessee, in which the supreme court of the state decided, that where a levy had been set aside, and a sale was made without a new one, the sale was void for want of authority. 2 Bin. 80. This defect is not cured by Mr. Todd attending at the inquisition pursuant to notice, the object of the inquisition was merely to ascertain whether the rents and profits of the land would pay the incumbrances in seven years; the judgment creditor held it at his peril, it was void if the marshal had not a fieri facias in his hands and had made a levy under it, and the purchaser is bound to look to the authority of the marshal to sell under a judgment. The mandate of the fieri facias having expired, the marshal had no control over it after its return to the court, his taking it out of the office could give him no new authority, nor could the court order it to be executed anew; there must be a fieri facias duly executed, and a venditioni exponas to make the sale valid. The levy is an indispensable part of the execution of the fieri facias, according to Burd v. Dansdale, and the writ cannot attach to the land without it; it is the declaration and act of the officer, that he has taken specific property for its satisfaction, without doing which he can proceed no further. The inquisition is no part of the mandate of the writ, but must come after it has been spent by the levy, unless the land is unimproved, or the interest of the defendant such as may be terminated in less than seven years, as an estate for life or in tail. If the land is held in fee and improved, the levy is the only act which can be done under the fieri facias, the inquisition is directed by law, as a foundation for a liberari facias or a venditioni, according to the finding of the inquest. Hence the necessity of a levy, and it may be presumed from facts, as in 11 and 18 Johns. referred to in the argument on the admission of the deed; but this shows the rule to be, that there must be one or there is no need of presumptions. It must be made before the return of the writ, and if made without a writ, it is void. Saxton v. Wheaton, 4 Wheat. [17. U. S.] 503. The last day for its execution is that of its return; a levy afterwards is void for the want of authority. Vale v. Lewis, 4 Johns. 456. The sher-

iff is a trespasser, and no title passes to the purchaser in such case. Devoe v. Elliot, 2 Caines, 244; Prescott v. Wright, 6 Mass. 20. An inquisition may be held after the return, where the levy is made before, for it is the completion of the requisition of the law, but the universal practice of taking out an alias fieri facias, when no levy has been made on a former one, shows the necessity of doing it, else why take out an alias in any case. In this case the record is complete, there is no allegation of mistake, or room for presuming an alias or a levy, for the old fieri facias and levy are returned with the inquisition, as the authority under which it was taken, and must be deemed the only authority existing. A writ of levari facias de bonis ecclesiasticis, is a continuing writ, on which the sheriff may levy from time to time, but if he returns it his power ceases. 2 H. Bl. 582. So of a habere facias on a recovery in ejectment. Runn. Ej. 434.

The want of a fieri facias and levy are not irregularity or error, as forms and modes of proceeding, which are cured by the acknowledgment of the marshal's deed in open court; these defects are fatal to the authority of the marshal, which the court cannot cure by their order to the marshal to proceed on the old writ, the court can act only by a new writ issued according to law. This case is in a court of law, in which no consideration of an equitable nature, arising out of the notice to Mr. Todd, and his appearing at the inquisition on behalf of Mr. Newman can be listened to, the plaintiff must make out a legal title. But in this case, after thirty-five years' possession, he can have no equity to disturb the defendant, even if this court could act on the principles of equity in an ejectment. We do not question the general principle, that a purchaser of real estate, under the process of a court which has jurisdiction of the cause, and power to order the sale, shall be protected, nor is he to suffer by the irregular proceedings or errors of judgment in the court. But our exception to this deed and its legal effect is, that there was a want of authority in the court to proceed to a sale without an execution, or which is the same thing, on a dead and void fieri facias, which was a mere nullity after its return; the defect was radical, as it left the marshal without a shadow of authority. No subsequent act of the court, in accepting the inquisition and ordering a venditioni, could operate retrospectively, so as to supply the want of an original authority in them or its officer, to divest the title of the defendant in the judgment. The power of the court to sell, is only in virtue of a fieri facias and levy, by which their power is brought to bear on any piece of property, it must fasten upon it, and remain so during the whole process of sale, from inception by levy, to the confirmation by deed acknowledged. A venditioni is process to complete the execution of the fieri facias, levy and inquisition; it is void if either are want-

ing; though a sale is made and deed acknowledged, it passes no title. Burd v. Dansdale's Lessee covers this case. It was a sale under a venditioni after a levy had been set aside, and no new one appearing to be made, the court would not presume one. On an inspection of this record, there appears no act or order of the court, in any way approving the acts of the marshal; the whole proceeding, subsequent to April, 1823, was the act of the plaintiff in the judgment. We neither admit nor deny the power of the court to order a new levy on a returned fieri facias, but as no such order appears, and the record is complete, none can be presumed, and we have a right to consider that none was made. This defect was never waived; the notice given at the time of the sale, showed our intention to contest the sale on this ground, and Mrs. Hess purchased at her peril.

On the second question. The act of 1798 covers this case in all its parts. There was no scire facias till after the expiration of seven years after the passage of the law, and when one was issued, it was not served on the terre tenants, or any notice given to them. This law applies to judgment creditors, as well as purchasers. 3 Bin. 347. It is a law respecting property and rights, which is as much a rule for the courts of the United States, under the thirty-fourth section of the judiciary act [1 Stat. 92], as for the courts of the state. As a part of the system of state jurisprudence respecting the lien on land, and the mode of selling it on execution, it is a rule of property and title, not of process or remedy, and this court is bound by it as a general law. [D'Wolf v. Raband] 1 Pet. [26 U. S.] 485; James v. Stookey [Case No. 7,184]; U. S. v. Wonson [Id. 16,750].

The subject matter is one peculiarly proper for state legislation, and it is important that there should be an uniformity between the rules of all courts respecting the lien of judgments, which cannot be preferred if state laws do not regulate it, for congress have no power to legislate on judgments in state courts. No act of congress gives a lien on a judgment, it depends solely on the law of the state, a judgment is enforced in this court by the laws of the state; the legislature may repeal the whole system, by which the proceedings on judgments of this court, would be suspended till congress would interfere. The thirty-fourth section is not confined to state laws then in force, but extends to all subsequent ones, affecting the rights and transmissions of property, and the supreme court pays such respect to state laws, and their construction by the courts of the state, that they will postpone a decision of a case arising on them, to await the judgment of the state court on the question. Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 524. This and the supreme court have always been governed by the intestate law of 1794, and the law which regulates proceedings in orphans' courts. The effect of this law is in the nature of an act limiting and abridging a right before indefinite, to five years without a scire facias; a limitation on the lien of judgment, not an act devising the form and mode of process to enforce it. It prescribes a condition, on which alone real estate within the state shall continue bound by a judgment, which the state is competent to do, and which becomes a rule of decision for this court, in giving judgment on a right of property accruing by a judgment. The supreme court are governed by state limitation acts, on all subjects. Bell v. Morrison, 1 Pet. [26 U. S.] 355; McCluny v. Silliman, 3 Pet. [28 U. S.] 270. So of recording acts or those for quitting titles and possessions. Hort v. Lamphire, Id. 289, 290. The law of 1798 partakes of all these characters, and is a most salutary one for the protection of creditors and purchasers against dormant and inactive judgments. It extends in terms to the judgments of this court, which are of record in this commonwealth, and has the same effect on a right depending on them, as if the case arose on a contract or deed. Though it was once held in this court, that the law did not apply between judgment and judgment, but only between a judgment creditor and a purchaser; yet the supreme court of the state have held otherwise, and their decision on a local statute is binding under the thirty-fourth section as a part of the statute. [Jackson v. Chew] 12 Wheat. [25 U. S.] 162. This is not the case of a creditor, however, the defendant is a purchaser under the sheriff's sale of the right of Hemphill, and stands upon his deed from the sheriff. It only remains to inquire whether the plaintiff has done any thing which can be deemed a substitute for the scire facias, as a substantial compliance with the terms of the law. The plaintiff has failed in establishing any analogy between this act and the statute of 2 Westm., the objects and remedies of which were different. The English practice of entering continuances of V. C. N. M. B. on the roll, though adopted in the state court, would not be sanctioned if the question was res integra. 13 Serg. & R. 149. It has never been adopted in this court, and is so utterly inconsistent with the words and spirit of the law, that it ought to be repudiated. An entry of non est inventus on a capias ad satisfaciendum, or of V. C. N. M. B. on the roll of a fieri facias not returned, can be no substitute for the scire facias, and notice to the terre tenants, expressly directed by the law. The statute of 2 Westm. prescribes no such notice. Courts were thus left at liberty to devise a substitute, but here there can be none. Purchasers cannot be protected without notice to inform them of what property was held bound by the judgment. This was the great object of the law (Hurst v. Hurst [Case No. 6,931]), whereas, the statute of Westminster applied only to the parties to the judgment. The plaintiff's construction would make a capias ad satisfaciendum returned non est inventus, or a fieri facias not

returned, equivalent to a scire facias, actually sued on a purchaser terre tenant. The supreme court of the state has never sanctioned this doctrine, and it cannot be the law of this court.

On the third question. The defendant claims under a purchaser from the sheriff, by a deed acknowledged, which, according to the construction by the supreme court of this state of the fourth section of the act of 1705, gave the purchaser a title disencumbered from all previous judgments against the person as whose property it was sold, as well as all those from whom the title passed to him. This was the principle decided in Com. v. Alexander, by which the law on this subject was finally settled in 1826, after remaining long doubtful. 14 Serg. & R. 257, &c. It had been previously settled, that a sale under an order of the orphan's court, discharged the land from all judgments against the intestate, by the provisions of the law of 1794 (Moliere v. Noe, 4 Dall. [4 U. S.] 450), both of which decisions were in accordance with the general opinion and practice of the bar. The same rule has been applied to a legacy charged on land, unless the land is sold subject to the legacy. Barnet v. Washebaugh, 16 Serg. & R. 410. The case of a mortgage stands by itself, and is thought not to come within the principle, though it has been decided otherwise in Willard v. Norris. 2 Rawle, 56. There can be no doubt, that it was in the power of the legislature to prescribe the effect of a sheriff's sale, nor that the construction of the act of 1705, as finally settled by the court of the last resort in the state, is a binding decision on this court. The case of Rankin v. Scott, 12 Wheat. [25 U. S.] 179, was decided on the local law of Missouri; it must be taken as the law of that state; though it may be correct in the general principles it asserts, it cannot control the law of this state as judicially settled. The local laws of every state are held to be binding as rules of property, whether they are those of usage or legislative enactment. [Jackson v. Chew] Id. 162. The great inconvenience of conflicting decisions on the construction of a state law, especially one on which so many titles depend as that of 1705, is a powerful reason for the acquiescence of the federal court in the settled course of state adjudication on local statutes.

On the fourth question. The plaintiff suffered the defendant and those under whom he claims, to take and hold the lot in question, and cover it with valuable improvements, without giving him or them notice, that he intended to hold it liable to his judgment, till after the expiration of more than thirty years from the entry of his judgment. In a court of equity every presumption would be made against a claim so stale. 1 Madd. 79, 90; 2 Ves. 13, 280; 2 Ves. Jr. 583. The plaintiff would be bound by his silence and acquiescence. 1 Fonbl. 151. Though the lapse of time is itself no limitation, it is so by analogy to the statute. This principle of equity is applied by courts of law in instructing a jury to presume any fact which will bar a stale demand; it is an universal one (2 Atk. 144), applying to all acts which the law can presume to have been done, the evidence of which has been lost by accident, or obliterated by time. The ground of the presumption is not the belief or proof of the act, it stands in place of specific or individual belief, as a rule indispensable for the peace of society and the security of possession. 12 Ves. Sr. 252, 265; [M'Clung v. Silliman] 6 Wheat. [19 U. S.] 604; Prevost v. Gratz [Id. 481]; 2 Saund. 175, 176. Any act necessary for this purpose, from a deed to an act of parliament, may be presumed (Cowp. 209, 210, 215); and when a legal presumption exists, it is equivalent to direct proof of a fact, or the production of a paper proving it. Payment of a bond is presumed after twenty years, and so of a judgment, mortgage, or rent. 7 Serg. & R. 410; 14 Serg. & R. 15, 16; 10 Johns. 414, 417; [Higginson v. Mein] 4 Cranch [8 U. S.] 415. Such presumption is judicial belief, and is matter of law where no circumstances are offered to account for the delay; if evidence is given touching such circumstances, the jury decide on the facts, and the court on their sufficiency in law, to take the case out of the principle of presumption. 9 Serg. & R. 382; 14 Serg. & R. 21; 7 Serg. & R. 410. Presumptions are applied not only to acts which extinguish, but to those which grant or create rights of property, as a right of way (3 East. 294); of a landing (2 Ball & B. 667); to open windows (2 Barn. & C. 686); the use of a water course (10 Serg. & R. 63). In all cases where the act of limitation bars an ejectment, any collateral right to land will be barred by the legal presumption as matter of law; it may be left to the jury to presume on less than the period of the statute. Here thirty-two years have elapsed from the date of the judgment, and twenty-eight from the purchase and possession of the defendant, the law will presume the judgment paid, satisfied or released, as to this property, on the same principle that possession by the mortgagor for twenty years, bars the right of the mortgagee to the money, and possession by the mortgagee for the same time, bars the equity of redemption. The law presumes a release of the lien of the mortgagee on the land in the one case, and the lien of the mortgagor on the legal estate of the mortgagee in the other. 7 Johns. Ch. 122; 2 Schoales & L. 636; [Hughes v. Edwards] 9 Wheat. [22 U. S.] 497; [Willison v. Watkins] 3 Pet. [28 U. S.] 52. It was competent to the judgment creditor to release the lien of his judgment on this lot; it was a common practice to execute partial releases of liens before the passage of the act of 1820, which expressly authorizes it; that such a release, or some other equivalent act has been executed, will be presumed. The plaintiff offers nothing to rebut the presumption, but rests upon the record to show that the judg-

ment is not satisfied, and that there can be no presumption against it. This may be admitted without impairing the principle for which we contend. It is indispensable for the security of purchasers, under circumstances like the present, for if the judgment can be enforced on property which has been held adversely for twenty-eight years. the possession of one hundred years cannot avail him. As to the property which the judgment creditor has pursued within twenty years, his rights are not affected by any presumption of law; but as to that which has been abandoned, as the present has been, the law will presume him to have done some act which will, in the language and policy of the law, quiet a long and peaceable possession, either by way of release, estoppel, or abandonment.

Mr. Rawle, Sr., in reply, was informed by the court, that they were not desirous of hearing him on the objections to the marshal's deed, he then proceeded to answer the other objections to the plaintiff's title. This is no case for the doctrine of legal presumptions in favour of any of the persons under whom defendant claims. Lang purchased only four years after the entry of the judgment of Wilson, and for ten years before the purchase of Newman, the judgment continued in active operation by sales of the property of Hurst from time to time. Newman purchased in 1815, only nine years after the judgment on the scire facias in 1806, which was record evidence that the judgment was unsatisfied, conclusive on Hurst and all claiming under him after April, 1791, unless collusion or fraud existed. This was legal notice to Newman before he bought, whether he had notice in fact, is immaterial; if he had not, it cannot be presumed that he obtained a release, if he had notice, he has bought with his eyes open. Nor can he claim the benefit of the presumption of payment after the lapse of twenty years, he had been in possession only eight years, when a levy was made on the property he purchased, notice whereof was given to him. The notice given by Mr. Todd on the 19th of April, alleges no satisfaction of the judgment, nor did Newman pretend it on the 8th of October following, in his reply to the notice of the plaintiff in the judgment; the complaint in April, 1823, was that the burthen on his property is increased by not embracing in the levy all the property bound by the judgment, thus admitting his own to be still bound. The presumption of payment of a bond, mortgage or judgment, does not attach as matter of law, unless it has been dormant for twenty years; the jury alone can presume it as a fact in less time, under the direction of the court, this is the general rule. 14 Serg. & R. 15, 19. But after twenty years, the presumption does not attach; if there are any circumstances legally sufficient to account for the inaction, they will be left to a jury to rebut the presumption. 10 Johns. 414; Dunlop v. Ball, 2 Cranch [6 U. S.] 183, 184;

[Higginson v. Mein] 4 Cranch [8 U. S.] 415; Goldhawk v. Duane [Case No. 5,511]. In this case there has been no period of twenty years from the entry of the judgment, during which it has been inactive, and the whole record is full of entries, which would rebut the presumption, if there was any colour for raising it. It was no laches in Wilson not to give notice of his judgment when this lot was about to be sold as the property of Hemphill; it was the duty of the sheriff to look for incumbrances upon it, and of Newman the purchaser to examine the titles, and the liens upon the property. Newman purchased in February, 1815, a scire facias issued to revive Wilson's judgment against the executors of Hurst to October, 1815, which remained open till July, 1817, when judgment was entered. With legal notice of these proceedings, and actual notice of the levy and inquisition in October, 1823, Newman neither prayed an audita querela, or moved the court to interfere with the proceedings, as he was bound to do, as was decided by this court in cases arising on the judgment of Wilson [Id. 17,808]. It was also decided that notice to purchasers or terre tenants was unnecessary. Every presumption which the law can raise is against Newman, and so far from the law presuming the judgment released or abandoned, it conclusively appears that it was in operation with his knowledge, and asserted as a lien on his property, before the law could raise any presumption in his favour, or imputation of laches in the judgment creditor, after his purchase. He will be presumed to have waived his objection to the levy, and admitted the existence of the lien of the judgment to have been a continuing one till that time.

There is no authority in a state legislature to bind this court; the law of 1798 was intended to apply only to the courts of the state, nor could it have been intended, to affect a judgment rendered in a court over whose proceedings they had no control. Here was a judgment, a capias ad satisfaciendum returned non est inventus, on which by the settled rule of the common law, as adopted by this court, an execution could be issued at any time without a scire facias; no state law will be held to be an order to them to change their established rules, and to annul a judgment, unless revived by scire facias in 1803. The words of the law may be satisfied by confining it to the courts of the commonwealth, and such has been its construction by the bar. My practice has been to take out a fieri facias and keep it in my drawer, when I wished to continue the lien of a judgment in this court, and to enter continuances by V. C. N. M. Breve, when desirous to take out an alias fieri facias, which could not be done without a scire facias, if the writ is returned. It has also been the practice, to search in the office of this court for all judgments, without regard to the law of 1798, which has been considered as a pro-

cess act, not applicable to the proceedings here. A scire facias is process; the time and circumstances under which it must issue, as well as the persons on whom it shall be served, are the modes of proceeding adopted by the court, which it ought not to suffer to be varied by a state law. It will be time enough to do it when the supreme court of the United States shall declare the law to be applicable to judgments here, as was done in [Bank of Hamilton v. Dudley] 2 Pet. [27 U. S.] 522, this has not been done as to this law, so that the court is left free to act upon its own opinion. The judicial power of the United States is created by the constitution, not the judiciary act; the thirty-fourth section makes the laws of the states rules for the decision of this court, but this has been held to apply as a guide to the judgment to be rendered, not to any proceedings to carry the judgment into effect; state laws on this subject are only acts regulating process. [Wayman v. Southard] 10 Wheat. [23 U. S.] 20; [Bank of U. S. v. Halstead] Id. 51, &c.

The late decisions of the supreme court of this state, respecting sheriff's sales, will operate most oppressively on judgment creditors in this court, if they are followed here; if a sale on a judgment in any court of common pleas in this district, destroys the lien of a judgment in this court, there is no security. The state laws require no notice of a sheriff's sale to be given elsewhere than in the county, and that by advertisement only; no notice need be given the judgment creditors, or other incumbrancers, of the contemplated sale, so that the prior lien of a judgment in this court, may become extinguished without the act of the party, the court, or notice. In a case like the present, all means of protection are unavailing, the property sold under the judgment against Hemphill was advertised in his name; a creditor of Charles Hurst was not bound to know that it interfered with the lien of his judgment. An advertisement in a newspaper is not made evidence as to third persons, it is sufficient notice as to the defendant whose property is to be sold, but cannot impair rights attached to it before it came into his hands. The sheriff searches only for incumbrances against the defendant, the money is appropriated to the eldest lien thus appearing, while the judgment creditor, who has the first pledge of the land against a former owner, is kept in utter ignorance that his rights are in danger until they are lost, as well his lien on the land, as the purchase money for which it sold. No such rule existed when Wilson obtained his judgment; it has not been adopted in this court, and is in direct contradiction to the rule settled by the supreme court of the United States in [Rankin v. Scott] 12 Wheat. [25 U. S.] 177. The supreme court of the state have several times declared that the effect of a sale under a younger judgment, on the lien of an older one, was an open one. 4 Yeates, 216; 2

Bin. 218, decided in 1809. No general rule was established till the case in 14 Serg. & R. 257, in 1826, long after the rights of the present parties had become fixed.

BALDWIN, Circuit Justice (charging jury). The first of the important questions which have arisen in this case, and very ably argued, is, whether the sale of the premises in question by the marshal, under the judgment of Wilson v. Hurst [Case No. 17,808], is void for want of an alias fieri facias, and a levy thereon to October term, 1823. If the writ of fieri facias, with a levy on specific real estate, was the only authority to a sheriff to make a sale, and vested him with the possession or right of property therein, this objection would be fatal; for an execution must be in part executed, or its execution be begun, before its return, in order to give any efficacy to subsequent proceedings upon it, otherwise the authority of the officer expires with his writ. But where the fieri facias and levy are only initiatory process, as the foundation of another writ, which is indispensable to authorize a sale, their effect is very different, because the fieri facias operates, when levied, neither to vest a right of property, or confers a power to sell. The mandate of a fieri facias in both cases is the same, to levy the amount of the judgment, and bring the money into court; the manner of levying on the personal or real property of a defendant, as well as of converting it into money is, however, widely different. In the execution of a fieri facias levied on personal property, the mode of proceeding is regulated by the common law; when levied on land, it is prescribed by the act of assembly of 1705, which authorized the sale of lands on execution. It is therefore necessary to consider the office and effect of a fieri facias and levy, as to the two species of property, in order to decide whether the same rules apply to both. A fieri facias is plenary authority to sell chattels, a levy under it gives the sheriff a property in them, in virtue of which he may, and is obliged to sell. 1 Salk. 323; 6 Mod. 293; [Zane v. Cowperthwaite] 1 Dall. [1 U. S.] 313; 11 Serg. & R. 304; Barnes v. Billington [Case No. 1,015]; [Wayman v. Southard] 10 Wheat. [23 U. S.] 45. After the levy his property in the goods continues; though the fieri facias is returned he may sell. The court may order him to bring the money into court, issue a distringas or venditioni exponas to compel him to sell, he becomes liable for the money by the levy; if he has made a sufficient one, the goods are his own, and he may sell when he pleases, unless otherwise ordered by the court. 5 Bin. 268, 273; [Wayman v. Southard] 10 Wheat. [23 U. S.] 45; 17 Serg. & R. 438; 2 Saund. 343, 344; 2 Law R. 1074. When he begins the execution of a fieri facias, he must complete it; his authority continues though he is out of office. 2 Bac. Abr. 366; 4 Day. Com. Dig. 234; 1 Salk. 12, 318, 323;

1 Lil. Reg. 767, 824. A distringas or venditioni gives no new authority to sell; it is merely compulsory process (1 Ves. Sr. 196; 4 Day, Com. Dig. 236; Shep. Abr. 547; 6 Mod. 295; [Zane v. Cowperthwaite] 1 Dall. [1 U. S.] 313) to execute a power resulting from the fieri facias, and the right of property by the levy.

As the levy is the operative act, it must be made by an actual seizure of the goods, in whole, or part in name of the whole. The sheriff may seize them by force (16 Johns. Rep. 288), take, and hold possession. The lien on them attaches when the writ comes to his hands till the return day, without a levy, but if no levy is made before it is past, the lien is lost, and the goods may be taken by a purchaser, or on a subsequent writ. 2 Serg. & R. 157. As to land, the lien attaches by the judgment, and remains though no levy is made on the fieri facias, the sheriff has no right to take possession, or to enter upon it to make a levy, and after levy he has neither the right to possession of property, or power to sell an estate of freehold in the defendant, if the property is improved, and his interest in it is of a nature which must continue for more than seven years, and the rents and profits will pay the incumbrances on it in that time. In this case the property in dispute was improved at the time of the fieri facias, and held in fee, a levy upon it could give no power to sell, the only further act which the sheriff could do was to hold an inquisition and return it to the court; the fieri facias, and all his power under it, became then functus officio. In case of an extent, he must have a liberari facias to authorize him to give possession to the plaintiff; in case of a condemnation, a venditioni exponas to give power to sell, it is an authority given by the act of assembly, additional to that given by the fieri facias. [Zane v. Cowperthwaite] 1 Dall. [1 U. S.] 313; 1 Serg. & R. 99; 4 Yeates, 213, 214. Hence it is obvious that there is no one particular in which the levy on chattels is analogous to a levy on land, where an inquisition is necessary; as the sheriff cannot enter on the land to make it, no act in pais can be necessary, its office is merely to designate the item of real estate which the sheriff selects for the satisfaction of the debt, on the rents and profits of which the inquisition is to be held, in order to ascertain whether it can be exposed to sale.

By the first section of the law, lands are made liable to be seized and sold by judgment and execution. The second section is a proviso, that when an execution is awarded to be levied upon lands, the sheriff shall not by such execution, or any writs thereupon, sell any lands which are sufficient to pay the debt in seven years, but shall deliver them to the plaintiff, as on an elegit in England. By the third section, which is also a proviso, that if the profits of such lands shall not be sufficient, the sheriff shall so certify on the return of the execution, whereupon a writ of venditioni exponas shall issue to sell such lands, in the manner directed concerning the sale of other lands; which is in the fourth section, enacting, "That the sheriff, by a levari facias, may seize and take all other lands in execution, and with convenient speed, with or without any writ of venditioni exponas, make public sale thereof on giving the notice prescribed, whereupon he shall make a return thereof, indorsed or annexed to the levari facias."

The entire silence of the law as to what shall be deemed a seizure of land, before the inquisition directed in the third, or the sale authorized by the fourth section, shows clearly that the time and mode of seizure or levy were not deemed essential; the second and third sections are conclusive declarations of the legislature, that the fieri facias and seizure did not authorize a sale of lands which would pay the debt in seven years. Thus excluding all analogy between the effect of a fieri facias and levy on goods, and productive real estate, and leading to the conclusion that the seizure of land was only to describe what the inquest was to pass upon, or the sheriff to sell. What the law deemed essential it prescribed, the holding the inquisition, its return, the venditioni, the notice of sale, its return indorsed or annexed, a deed by the sheriff acknowledged in court, and then, to leave no doubt of the effect of such proceedings, declaring, "that lands so sold shall be held by the purchaser for such estate as the debtor held it." 1 Smith's Laws, 57, 59. It would be an unauthorized construction of this law to declare, that after every prescribed requisite had been complied with, the sale was void for not doing an act not required, viz. the making a levy before the return of the fieri facias. It cannot be made by any visible, notorious act, or marks on the ground, or by an actual seizure; it must consequently be done on paper, and giving notice to the defendant of the property selected, with the time and place of holding the inquisition, which is all that could be done by the sheriff going to the premises, and proclaiming a levy in fact. No form or mode of making a levy on land, or the time in which it must be made, are prescribed by the act of assembly; every object for which one is required, either to authorize the sheriff to hold the inquisition, or to protect the debtor, is fully answered by notice to him of the levy and inquisition. It is wholly immaterial whether the levy is indorsed upon the writ before or after the return day, if done in a reasonable time before the notice of an inquisition. Without any reason, therefore, for requiring the levy to precede the return, any positive law prescribing any possible effect to be produced by it, or any adjudication of a state court declaring it indispensable to support subsequent proceedings, we cannot say that it is a fatal defect in the plaintiff's title.

The first section of the law is limited and restrained by the proviso in the second, in order to hold an inquisition for the protection of the debtor, yet it prescribed no notice of either a levy or of the inquisition; that was not made necessary till 1806. 4 Yeates. 21; 2 Bin. 215; S. P., 4 Day, Com. Dig. 242. It was then directed that for want of sufficient personal property, the sheriff should levy the real estate of the defendant, return his proceedings to the next court, and give notice of the inquisition (4 Smith's Laws, 331); but it required no notice of the levy, or prescribed the mode or time in which it should have been made. It would be strange to suppose that the act of 1705 had made a levy before the return of the fieri facias, indispensable to further proceedings, and that the want of it was fatal to the power of the court to order, and the sheriff to make a sale under a venditioni; and yet, in 1806, the legislature made no provision for notice to defendant of the levy, while they require it as to the inquisition. The nature and object of the inquisition clearly indicate the intent of both laws, it was the all important proceeding, without which an estate in fee in improved lands could not be sold, the want of it arrested all further proceeding, and notice was prescribed to enable the defendant to show the rents and profits. None was required as to the levy, for the obvious reason that the mode and time of making it had no effect on the rents and profits, and notice of the inquisition specified property on which the inquest was to pass. The construction of these laws by the supreme court tends to the same conclusion, they have always held an inquisition necessary to the validity of a sale, but that it may be held after the return of the fieri facias. though years may have elapsed, and where an inquisition has been quashed for irregularity, a new one may be held without an alias fieri facias. [Weaver v. Lawrence] 1 Dall. [1 U. S.] 379. So a sale after the return of the venditioni is good. 2 Bin. 91, 92; 1 Serg. & R. 98, 99; 10 Serg. & R. 261. Though the law directs the return of the inquisition and venditioni, the omission to make it does not affect the validity of the sale. 1 Rawle. 96, 97. If property is condemned at the suit of A, it may be sold on a venditioni at the suit of B, without a new inquisition. 1 Serg. & R. 92, 97, 98, 100.

In this case there was a fieri facias and levy before the return. The levy was set aside as irregular, but a new one could be made under it on the same principle which applies to the new inquisition after quashing an irregular one: whether this was done by correcting the first levy, adopting it as to the property in question, is immaterial. The court had the power to order a new or amended levy on the old fieri facias, or might adopt and sanction the act of the marshal on the return of the inquisition with the fieri facias and levy, it was not a matter affecting the power or jurisdiction of the court, but related

to the execution of their process, of which they had the right of judging and directing the marshal [Wayman v. Southard] 10 Wheat. [23 U. S.] 45, &c.; 1 Serg. & R. 101. On the return of the inquisition the court issued a venditioni, reciting and adopting what had been done. this is a mandatory writ, which the marshal was bound to obey by a sale, it is the writ of the court, its order, not that of the party who sues it out, having the same efficacy whether issued on a præcipe of an attorney or by special order on motion. It justifies the marshal in its execution by a sale, and passes the title to the property sold, if the court has jurisdiction and power to order a sale. But if the proceeding was irregular it can be corrected only by the court on motion. or, if erroneous, by a writ of error: neither the irregularities nor errors of a court will affect the title of a purchaser, under their process. where their power to order the sale has arisen. A superior court may revise their proceedings by their appellate power, if a writ of error or an appeal is presented within the time prescribed by law; but if that time has expired, a judgment or execution cannot be reversed, however erroneous. Though personal property is sold on an execution which has issued contrary to an express act of congress. the sale is valid. Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328, 333. The purchaser is protected by a settled principle of jurisprudence. that the proceedings of a court of competent jurisdiction cannot be called in question collaterally, when they cannot be examined directly. This is a rule indispensable to the security of property, held by sale under judicial process. especially applicable to the sales of real estate by execution in this state. Vide [Voorhees v. Jackson] 10 Pet. [35 U. S.] 473, 478, acc.

The defendant, or any person claiming under him, has every opportunity of calling into question the regularity of the proceedings, by an application to the court before the sale; he may object to the acknowledgement of the deed. when the court will set the sale aside, if they are irregular or erroneous, and he may have his writ of error. If there is just cause for either, justice can be done to the party complaining. without injury to any party; if the sale is set aside. the purchase money is refunded, or its payment not exacted. if the judgment is reversed, the purchaser is protected by the common law and the act of 1705, and restitution of the purchase money only is awarded. Whereas if the sale can be avoided in a collateral action, the grossest injustice is done to the purchaser. he loses both purchase money and land, and the defendant whose debt has been paid by the sale, holds the land without any obligation to refund. Hence has resulted the rule adopted in all courts, that in a collateral action. the only open question is, the jurisdiction and power of the court to order the sale. [Thompson v. Tolmie] 2 Pet. [27 U. S.] 160: 11 Serg. & R. 424. If the writ justifies the officer in its execution,

a sale under it is valid. 10 Coke, 76 a, b; 1 Ves. Sr. 195; [Tayloe v. Thompson] 5 Pet. [30 U. S. 370]; [Voorhees v. Jackson] 10 Pet. [35 U. S.] 473, u. In this state, the reception of an acknowledgement of a sheriff's deed is a judicial act, in the nature of a judgment of confirmation of all the acts preceding the sale, curing all defects in process or its execution, which the court has power to act upon. Vide [Voorhees v. Jackson] 10 Pet. [35 U. S.] 472, 476. When the acknowledgement is once taken, every thing which has been done, is considered as done by the previous order, or subsequent sanction of the court, and cannot be afterwards disaffirmed collaterally. 1 Serg. & R. 101; 4 Yeates, 214; 6 Bin. 254; 2 Serg. & R. 54, 55. The court which directs the sale, can alone judge of the legality of acts done under its authority, 1 Serg. & R. 101; 2 Serg. & R. 54. It follows, that all questions arising on judicial sales, when their validity is questioned in an ejectment, must be those of authority, not of irregularity, or error in awarding, executing, or confirming process, or acts in pursuance of it. If the power of the court is once brought into action, no tribunal can declare their proceedings nullities; if an act is necessary to be done before their power to sell can be exercised, it will be presumed they had evidence of it unless the contrary expressly appears: as the existence of debts and of minor children to support a sale by order of an orphan's court (11 Serg. & R. 424; [Thompson v. Tolmie] 2 Pet. [27 U. S.] 161); or a levy on land to support a sheriff's sale. (11 Johns. 517; [Voorhees v. Jackson] 10 Pet. [35 U. S.] 473, acc.).

It has been much pressed on us, that a contrary principle is established in Burd v. Dansdale's Lessee, 2 Bin. 80, and Saxton v. Wheaton, 4 Wheat. [17 U. S.] 503; but we think them perfectly in accordance with our views of the law. In the former, the levy had been set aside by the court with directions "to levy anew," a sale was made without any new levy, which the court declared void expressly on the ground of "the venditioni exponas having issued contrary to the order of the court." 2 Bin. 92. In Saxton v. Wheaton the sale was made under the fieri facias, which authorized a sale of land by the law of Maryland in force in the District of Columbia (without any other process or the acknowledgement of the deed to the purchaser), in the same manner as the sale of a chattel. The levy then was the all important act to authorize the sale, and as in the case of goods must be made before the return, according to the construction put on the law of Maryland [Wheaton v. Sexton] 4 Wheat. [17 U. S.] 506, though it is no authority for a similar construction of the law of this state, which is widely different. It is therefore our opinion that the defendants have failed in sustaining their first objection to the plaintiff's title.

The next objection is, that the lien of Wilson's judgment having been lost for the want of a scire facias, under the act of 1798,

the marshal's sale gave no title to the property in controversy. The terms of this law extend to all judgments, in any court of record within this state, which are broad enough to take in those in this court; its object is declared to be "to prevent the risk and inconveniences to purchasers of real estate, by suffering judgments to remain a lien for an indefinite length of time, without any process to continue or revive the same," which apply in whatever court such judgments are rendered. We cannot consider it as a mere process act, it is a part of a great system of jurisprudence, for the safety and protection of purchasers, from secret or dormant incumbrances or deeds, long adopted, and amended from time to time, as occasion required existing evils to be remedied by supplementary provisions. No form of process is prescribed for enforcing a judgment, the plaintiff is required to do certain acts to continue the lien of his judgment, partaking of the nature of an act of limitations, a recording act, or a supplement to the law for docketing judgments, and destroying their lien by relation and compelling an entry of satisfaction. 8 Serg. & R. 379. So it seems to have been considered by the court and bar in Hurst v. Hurst [Case No. 6,931], without questioning its application to the federal courts, except as between one judgment creditor and another; that question does not arise here, as the defendant is a purchaser, both under a deed from the defendant in the judgment, and under the sheriff by deed acknowledged in open court. The effect of the law in all cases to which it applies, is to absolve the property from the lien of the judgment, as completely, as in the case of a deed or mortgage not recorded in the time prescribed by the recording acts, a judgment not docketed, or fieri facias not delivered to the sheriff. The questions arising under it are those of property, title, and the rights of purchasers for a valuable consideration, on the faith of a law providing for their case. It cannot be doubted that in a suit in a state court, this law would be the rule of decision on the rights of the parties; it is difficult to perceive a reason why a different rule should be adopted in this court, merely because the plaintiff being a citizen of another state, may bring his suit here or in the state court, at his option. Both courts administer the laws and jurisprudence of the state, the rules of property and title are the same, as well as the mode of transmission by judicial process; all regulated by state laws, there ought to be one uniform course of adjudication upon them. If a judgment which by the law of the state has lost its lien, can be made the basis of a sale by the process of this court, and the sale be held valid to pass the title, so that a purchaser under the defendant, or the judicial process of a state court, cannot avail himself of the protection of the state law, we must adopt this principle. That a judi-

cial sale of real estate in Pennsylvania, which is void by its law, is valid in this court, and a judicial sale, valid to pass the title by the laws and in the courts of the state, is void by the laws of the United States. We do not feel authorized to so decide in a suit at common law, in which the rights of both parties depend on the laws of the state, on a subject matter on which congress possesses no constitutional jurisdiction, nor has in any matter assumed its exercise. There can therefore be no collision between the state laws, and the constitution, laws or treaties of the United States, so that the case comes clearly within the provisions of the thirty-fourth section of the judiciary act. Its application is not confined to state laws in force at its passage in 1789, but extends to all laws which affect the right in litigation at the trial, which prescribe a rule for the judgment to be rendered, embracing the whole subject of the transfer of property, liens upon it, and all consequent judicial proceedings, whether in courts of common law, or special jurisdiction. These are subjects of internal police and state regulation, over which the states have delegated no power to the federal government, on which the states can legislate in any manner, and to any extent, not prohibited by the constitution of the state or the union. Laws which relate to practice, process, or modes of proceeding before or after judgment, are exceptions to the thirty-fourth section, as congress have legislated on the subject. The supreme court of the United States have established the distinction to be this, state laws, which furnish the court a rule for forming a judgment, are binding on the federal courts, not laws for carrying that judgment into execution, that is governed by the acts of congress and the rules and practice adopted pursuant thereto. [Wayman v. Southard] 10 Wheat. [23 U. S.] 24–51, 65. This distinction is illustrated in the case of Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 525, 526. The occupying claimant law of Ohio, passed in 1810, was held to be a rule of property and decision in the federal courts, but that they could not carry it into effect by changing their modes of proceeding, as established and regulated by practice and the acts of congress, though the right of the party to the benefit of the law, was not impaired by the inability of the court to act upon it in the manner directed.

Feeling bound, then, to adjudicate upon the rights of the parties in this case, according to the law of 1798, we proceed to the question of its effect on the judgment of Wilson v. Hurst [supra]. A capias ad satisfaciendum was issued to October, 1791, returned non est inventus, without any further proceedings for fourteen years from the date of the judgment, and seven years from the passage of the law, which contains no exception, admits of no construction, or any substitute for the scire facias, and its service

on the terre tenants, who were purchasers, and for whose protection the law was passed.

It has been strenuously urged by the plaintiff's counsel, that this law admits of the same construction which has been given in England and this state to the statute of 13 Edw. I., st. 1, c. 45, 1 Ruffh. St. 109, directing a scire facias where no execution had issued within a year and a day, but we can perceive no analogy between them. That provided and extended a remedy, by process, to enforce a judgment, this limits, restrains and annuls its lien, making all process to enforce it of no effect; that cured a mischief putting a plaintiff to a new suit, this protected a purchaser from the mischief of an indefinite lien; that had for its object an award of execution, in virtue of the scire facias, this made one indispensable, to save the lien of the judgment for a term of five years. Vide 3 Rawle, 12, 13. As the statute of Westminster was a remedial one to the plaintiff, it was liberally construed in his favour, so that when an execution had been taken out and not returned, entries on the roll of continuances by vice comes non misit breve, would authorize an alias fieri facias to issue at any time, on which a levy could be made on real or personal property. Hence arose the opinion that the judgment remained a lien on land, while ever the plaintiff could take out a fieri facias; it followed, that the lien of the judgment being as indefinite as the length of the continuance roll, produced the very evil which was intended to be remedied by the act of 1798. A strong illustration of the effect of this construction of the statute of Westminster, if applied to purchasers of real estate, is furnished in the case of Lewis v. Smith. A pocketed fieri facias had been continued eleven years, by the entry of vice comes non misit breve, after an alias had issued, and the alias was held to have issued regularly. 2 Serg. & R. 154, 158. In that case the levy was on personal property only, and so not affected by the act of 1798, had it arisen before its passage, and a levy made on lands in the hands of a purchaser, no one could have doubted the wisdom, justice or policy of the law, for the purchaser would have no means of ascertaining from the record what was due on the judgment at the time of his purchase, and have continued exposed to every inconvenience which the legislature intended to remove.

If a doubt could exist, whether such a case or the one before us comes within the preamble and the enacting words of the first section, it would be removed by the third, which requires the scire facias to be served on the persons occupying the real estate. on the defendant, his feoffees, or their heirs or administrators, &c. It would be a perversion of the law to construe a capias ad satisfaciendum issued in 1791, to be a scire facias issued in five years after 1798; a

return of non est inventus to be a service on the terre tenants, the defendant or his feoffees, or a capias ad satisfaciendum returned non est inventus, to be a fieri facias continued fourteen years by an entry of vice comes non misit breve. No decision of the supreme court of the state has been had, which has settled the construction of this law as to its application to land in the hands of a purchaser, under circumstances like the present, or established any principle which would bring this case within the doctrine of Lewis v. Smith. We cannot consider the opinions or declarations of the judges, that the act of 1798 is analogous to the statute of Westminster, to be such an adjudication of the point as makes it our duty to consider the construction of the law to have been settled as a rule of property.[1] In this court the question is entirely open, and being free to decide upon our views of the law, we have no hesitation in instructing you that as its requisitions have not been complied with, the judgment of Wilson had ceased to be a lien on the property in question before 1805. The consequence is, that the incumbrance on the property having been removed by the operation of the act of 1798, the purchaser under Hurst must hold it under his conveyance; for a scire facias issued after the five years could not restore the lien so as to affect a purchaser, though it would keep it alive as to the defendant, who does not come within the words or policy of the law. This objection to the plaintiff's recovery is therefore fatal, and would render it unnecessary to consider the remaining ones for the purposes of this case; but as they would be equally decisive if they can be sustained, as they are of great impor-

[1] Though the supreme court of this state in Pennock v. Hart, 8 Serg. & R. 376, and Com. v. M'Kisson, 13 Serg. & R. 146, affirmed the doctrine of Lewis v. Smith, yet they declared that if it were res integra, without precedent or practice to the contrary, they would not so construe the act of 1798, and cautiously forbore an opinion how far an execution not levied, and no actual renewal for more than five years, would keep alive the lien by an entry of continuances on the record, 13 Serg. & R. 149. In Vitry v. Dauci, 3 Rawle, 12, the analogy between the statute of Westminster and the act of 1798 is repudiated, one conclusive reason for which is given by the chief justice; in the former case, the statute gives the scire facias in order to enable the plaintiff to take out execution, whereas the act of 1798 declares the object of the scire facias to be to continue the lien for another term of five years. The doctrine of Smith v. Lewis was also repudiated in that case, and most conclusively so in Brown v. Campbell, in which it was held, that an execution levied, preserves the lien only on the land levied on, unless a scire facias is taken out within five years, and that the practice of perpetuating the lien by an execution levied on any thing but the land itself, has never received the sanction of judicial decision. 1 Watts 42; Sp., Id. 381; 1 Pa. St. 276, 279; 3 Pa. St. 444, 445. These cases are also decisive of the fourth question made by the defendants in this case, and in favour of the objection to the plaintiff's title, on the ground that no levy was made on the property in question before 1823.

tance, and have been fully argued, we feel it our duty to express an opinion on one. It must arise in this court on future sales of real estate, on which there is an incumbrance older than the one under which it is sold; every consideration calls for its speedy decision, it arises directly in this case, and is as vital a question as those already disposed of. Had it been first considered and decided against the plaintiff, the others would have been as unnecessary for this cause, as this may be now; but the order in which the court takes up the various questions in a cause does not make their opinion on the last more extra judicial than the first, where they all arise in the cause, and could not be evaded if they were presented singly, they ought to be decided.

The third objection to the plaintiff's recovery is, that the sale by the sheriff in 1815, on the judgment of Tompkins v. Hemphill, in the court of common pleas, operated as a discharge of this property from all prior incumbrances; and that, by the sheriff's deed, Newman held an unincumbered title, admitting that the judgment of Wilson v. Hurst was till then an existing lien. This objection presents a question wholly new in this court, arising under the fourth section of the act of 1705, on which an indefinite number of titles depend, yet for more than a century after its passage it remained unsettled; though often discussed at the bar and on the bench, the supreme court of the state have repeatedly and expressly declared it open (Keen v. Swaine, 3 Yeates, 562, 564; Patterson v. Sample, 4 Yeates, 316; Young v. Taylor, 2 Bin. 231); and so it remained till 1826. If the effect of a sheriff's sale under a younger judgment depended on general principles, we should be bound by the opinion of the supreme court of the United States in Scott v. Rankin. The plaintiff claimed real estate on a sheriff's sale to himself under the older judgment due to himself; the defendant claimed under a prior sheriff's sale to himself, under a younger judgment due to him. The court declared it as an "universal principle, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien is intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity. The single circumstance of not proceeding on it until a subsequent lien has been obtained and carried into effect has never been considered as such an act. In the case at bar the judgment is notice to the purchaser of the prior lien, and there is no act of the legislature to protect the purchaser from that lien." [Rankin v. Scott] 12 Wheat. [25 U. S.] 177. The second sale under the elder judgment was held to pass the title. This decision is authoritative on this court, and settles the general principle, that the prior lien is entitled to prior satisfaction; the only question which would remain is,

whether the legislature have protected the purchaser under the younger lien against the operation of this principle. After providing for the sale on execution of lands, the rents and profits whereof would not pay the debt in seven years, and the delivery to the plaintiff on a liberari facias of lands which would so pay the debt, to be so held by him as of his free tenement till his debt was paid, the fourth section declares the effect of both a sale and an extent: "All which said lands, tenements, hereditaments and premises, so as aforesaid to be sold or delivered by the sheriff or officer aforesaid, with all their appurtenances, shall or may be quietly and peaceably held and enjoyed by the person or persons, or bodies politic, to whom the same shall be sold or delivered, and by his and their heirs, successors and assigns, as fully and amply, and for such estate and estates, and under such rents and services as he or they for whose debt or duty the same shall be so sold or delivered, might, could or ought to do at and before the taking thereof in execution." 1 Smith's Laws, 59. A previous act passed in 1700, had provided for the sale of lands on execution and appraisement, after which it declares, "such lands shall be and remain a free and clear estate to the purchaser or creditor, to whom they are so made over or sold, his heirs and assigns for ever, as fully and amply as ever they were to the debtor." Id. 7. In the sixth section of the act of 1705, after providing for the sale of mortgaged lands on a levari facias, or their delivery to the mortgagee for the want of buyers, the effect of such proceeding is declared to be, "and when the said lands and hereditaments shall be so sold or delivered as aforesaid, the person or persons to whom they shall be so sold or delivered, shall and may hold and enjoy the same with their appurtenances. for such estate or estates as they were sold or delivered. clearly discharged or freed from all equity and benefit of redemption, and all other incumbrances made or suffered by the mortgagors, their heirs and assigns, and such sales shall be available in law and the respective vendees, mortgagees or creditors, their heirs and assigns, shall hold and enjoy the same, freed and discharged as aforesaid." Id. 60. In the eighth section is a proviso, "that no sale or delivery which shall be made by virtue of this act, shall be extended to create any further term or estate to the vendees, mortgagees or creditors, than the lands or hereditaments so sold or delivered shall appear to be mortgaged for by the said respective mortgages or defeasible deeds." Id. 61. In giving a construction to the fourth section of the act of 1705, we cannot pass over the striking difference, between the effect of a sale or delivery of lands under that, and the act of 1700; the latter says it shall be. and remain, "a free and clear estate," "as fully and amply as ever they were to the debtor," which of course removes all incumbrances done or suffered by him. Had it been intended that the same effect should be given to a sale or delivery under the act of 1705, the same words would have been used, whereas the words "free and clear estate" are omitted, and the words "as fully and amply as ever they were to the debtor," are carefully supplied by "as fully and amply and for such estate and estates and under such rents and services, as the debtor might or could do, at or before the taking them in execution." It would be carrying construction to an unwarrantable extent. to hold these two provisions to have the same meaning; but if we could do this, it would be in direct contradiction to other parts of the act of 1705.

The second section directs, that in case the rents and profits will pay the debt in seven years, "the lands shall be delivered on an extent, in the same manner and method as lands are delivered upon elegits in England." Now the settled rule in England was then, and is now, that if a creditor by statute, recognizance, or judgment, takes the land of a debtor by elegit, a creditor by an elder incumbrance may levy on the moiety of the same lands. and hold it by his elegit (Yel. 12; Cro. Eliz. 797; Noy, 47; 1 Goldes. 38; 3 Leon. 239; 4 Leon. 10; Co. Litt. 289, b; Law Ex. J. 184, 186; Gilb. Law Ex. 55); the reason for which is, that the first judgment binds the moiety of the land, and the second can extend only the fourth part; therefore if the last judgment extends the moiety of the whole, the first judgment shall extend from him the half, because a moiety by the statute, is to be attendant to satisfy the first judgment (Gilb. Law, Ex. 55). Where an execution is levied on goods, the rule is different, because the judgment binding only from the delivery of the fieri facias, the first which comes to the hands of the sheriff, is entitled to prior satisfaction. By applying the English rule as to elegits, instead of the fieri facias, the legislature have conclusively declared, that an extent on a younger judgment, shall not postpone the elder judgment, but that the lands may be taken from the younger creditor. The words in the fourth section, "to hold to him as his free tenement for the satisfaction of his debt," &c., are taken from the writ of elegit, Fitzh. Nat. Brev. 588, they are used because a remedy by assise is given in case of eviction, still the tenant by elegit has no freehold but only a chattel interest, which devolves on his executors. 2 Co. Inst. 396; 2 Saund. 68, note. These words cannot therefore give to the younger creditor any right to hold the land on an extent against the prior creditor, while his judgment is unpaid; and as the law applies equally to lands sold on a venditioni exponas or delivered on a liberari facias. the conclusion is inevitable. That as the right of the prior judgment is not affected by a delivery on a younger one,

it cannot be impaired by a sale under the younger; the words of the law admit of no distinction, "all land so as aforesaid to be sold or delivered," shall be held and enjoyed by the person, "to whom the same shall be sold and delivered." Nor does it admit of the construction, that creditors who receive possession under a liberari, shall hold and enjoy the land against a prior judgment creditor, as it would be contrary to the law of eligit in England, adopted expressly in the second section. It necessarily follows, that as the purchaser from the sheriff is on the same footing, he must hold subject to prior judgments. The creditor who holds the lands till the debt is paid, or the one who purchases, takes it as the debtor held it (and to remove all doubt the law defines the time), at or before the taking thereof in execution; not before judgments had been rendered against him. Taking also the second and fourth sections of the law, in connection with the sixth, which defines the effect of the sale or delivery of mortgaged lands, the meaning of the fourth is still plainer; the land shall be held and enjoyed freed from all equity of redemption and all incumbrances made or suffered by the mortgagor, his heirs and assigns. If it was intended that the same effect should be given to a sale, or delivery on execution on a judgment, it would have been so declared; or if it had been intended that the same effect should be given to a sale and delivery on process on a mortgage, as on a judgment, the same words would have been applied to the former, either by repeating them, or a reference to the fourth section. Hence, we are clearly of opinion, that a sheriff's sale under a judgment, pursuant to the fourth section, has no greater effect than to pass the estate as the debtor held it, when taken in execution, and can no more extinguish or impair the lien of an older judgment, than a deed from the debtor. When the legislature intended to discharge the land from incumbrances, they did so in express terms, the two sections are parts of the same law and same system, providing different modes of selling lands on a judgment or a mortgage; it was their peculiar province to define the effect of the respective modes of sale and delivery, on the incumbrances existing at the time. In our opinion, it would be judicial legislation for us to so construe the law, as to confound distinctions plainly made. It is not for us to inquire into their reasons, or the sound policy of the one or the other mode; the law has defined the effect of both modes of proceedings too plainly to be mistaken. We can perceive neither in the words, nor manifest intention of the law, any thing to exclude from this case, the universal principle laid down by the supreme court, in Scott v. Rankin, that the prior lien is entitled to prior satisfaction, nor any thing in the law, by which the purchaser under a younger lien can be protected from its application. But

if we are wrong in this view of the case, and the true meaning of the law is, to give to both modes of proceeding the same effect, the case of the defendant requires us to go much further. A sale under a mortgage discharges the land, only "from incumbrances made or suffered by the mortgagor, his heirs and assigns," leaving it subject to incumbrances upon it, when it came to his hands, if a sale under a judgment has no greater effect, the defendant cannot make out his case. The plaintiff claims by a sale, under a judgment against Charles Hurst, before he had made any conveyance, the defendant claims under a sale made on a judgment against Hemphill; he must therefore establish the proposition, that such a sale discharged the land from all incumbrances upon it, made or suffered by any former owner. This will require the fourth section to be stretched, not only so as to cover the sixth, to carry it not only to the full extent of the act of 1700, by giving the purchaser "a free and clear estate" in the lands as fully and amply as ever they were to the debtor, but further yet, to give "a free and clear estate, as fully and amply," as any former owner had held it, before any incumbrance whatever existed. It would be deemed a bold construction of the sixth section, to hold a sale under a mortgage to be a discharge of incumbrances made or suffered by any person who had owned the land before the mortgagor; it would be overlooking entirely the definition of the effect given by the legislature, and substituting one made by the judiciary in opposition to it. And if the point were new, it would be a still bolder assumption, in carrying the effect of a sale under the fourth section, so far beyond either the sixth section of the act of 1705, and even beyond that of 1700. The proposition is a startling one, as a matter of construction on the whole system of state jurisprudence, in relation to selling land for debts. By an act of assembly passed in 1705, the orphan's court was authorized to sell the lands of an intestate for the payment of his debts, maintenance and education of children, but it did not define the effect of such sale. 1 Dall. Laws, Append. 44, 45.

In 1794 another law was passed, declaring, "that no lands so sold shall be liable in the hands of the purchaser for the debts of the intestate." 3 Dall. Laws 530. This is much more explicit, than the fourth section of the act under consideration, but it certainly cannot be held to discharge the land from any debts, other than those due by the intestate. In the case of Moliere v. Noe, 4 Dall. [4 U. S.] 450, 454, it was strenuously contended that it did not extend to judgments against the intestate; in deciding that the purchaser held the lands discharged from such judgments, the supreme court of this state did not intimate the doctrine that the land was not still bound by incumbrances suffered by former owners, or construe the act of 1794

to extend to a mortgage given by the intestate himself. On the contrary, they declared a mortgage to be on a different footing from a judgment, and that the orphan's court had no power to sell a greater estate, than the mortgagor was possessed of. This court would not be the first to declare, that a sheriff's sale under the act of 1705, would discharge the land from incumbrances prior to the judgment on which it was sold, when a sale under the act of 1794 would not discharge it from the lien of a mortgage given by the intestate. We could not construe the deed of the defendant in the judgment, conveying the estate in the words of the fourth section of the act of 1705, as a covenant to pay existing incumbrances; the purchaser would buy at his risk; a covenant in the words of the sixth to pay "incumbrances made or suffered by the mortgagor," would not extend to judgments against a former owner, nor would a covenant to pay "the debts of an intestate," in the words of the act of 1794, create any obligation to pay any debt, not of the intestate, though it was a charge upon the land in his hands.

We cannot give to a sheriff's deed, made in pursuance of a law defining its effect, any greater efficacy, than the deed of the debtor, made with covenants in the words of the law. If then the question presented by this objection remains to be decided by our opinion of the act of assembly, or the principles settled by the supreme court of the United States, we should not hesitate in declaring, that the sale under the judgment against Hemphill, did not impair the plaintiff's right of recovery. If land after being sold by order of an orphan's court remains charged in the hands of a purchaser, with a mortgage given by the intestate; a fortiori, land sold by the sheriff remains charged with all incumbrances, prior to the judgment on which it was sold, and so we should feel it our duty to instruct you, if we are governed by the acts of assembly, the case of Scott v. Rankin [supra], decided in 1827, or Moliere v. Noe [supra], decided in 1806. But we find that the supreme court of this state in 1826 gave a different construction to the act of 1705 in Com. v. Alexander, 14 Serg. & R. 257, etc. In that case they decided that a sheriff's sale discharged the land from all prior judgments against the defendant, as whose property it was sold, and any other person from whom it came to him. In Barnet v. Washebaugh they applied the same rule as to a legacy charged upon the land. 16 Serg. & R. 410. In Willard v. Norris they held that a sale on a judgment discharged the land from a prior mortgage. 2 Rawle, 56. In M'Lenahan v. Wyant the court declare the same rule to be applicable to all judicial sales, whether by an order of orphan's court, or by a sheriff; and that they divest all liens whether general or specific. 1 Pen. & W. 112, 113. Such has been the course of adjudication in the court of the last resort in the state for the last four

years, in direct affirmance of the doctrine contended for by the defendant's counsel; it is now a rule of property and title, and as a settled construction of a state law, it is deemed to be a part of the law itself, and, generally speaking, as much a rule of decision in the federal courts under the thirty-fourth section of the judiciary act, as the text of which it is the judicial exposition. [Shelby v. Guy] 11 Wheat. [24 U. S.] 367. The extinguishment of a prior lien is not impairing the obligation of a contract, for none exists between the prior creditor, the sheriff, or his vendee; the effect of the law so construed divests a vested right, but unless this right is founded on a contract, it is not obnoxious to any prohibition in the constitution of the United States. [Satterlee v. Matthewson] 2 Pet. [27 U. S.] 412.

Those are the settled principles of the supreme court of the United States, to which we must conform; they will yield their own construction of the statutes of a state to that of the state courts previously made, respect their local common law and usage, and administer the jurisprudence of the states as their own courts do. [Bell v. Morrison] 1 Pet. [26 U. S.] 359, 360; [Brown v. Van Braam] 3 Dall. [3 U. S.] 344; [M'Keen v. Delancy] 5 Cranch [9 U. S.] 22, 32; [Polk v. Wendal] 9 Cranch [13 U. S.] 87; [Martin v. Hunter] 1 Wheat. [14 U. S.] 379; [Shipp. v. Miller] 2 Wheat. [15 U. S.] 316; [Thatcher v. Powell] 6 Wheat. [19 U. S.] 119; [Elmendorf v. Taylor] 10 Wheat. [23 U. S.] 152; [Shelby v. Guy] 11 Wheat. [24 U. S.] 361; [Jackson v. Chew] 12 Wheat. [25 U. S.] 153; [Bank of Hamilton v. Dudley] 2 Pet. [27 U. S.] 505, 556; [Bell v. Cunningham] 3 Pet. [28 U. S.] 85; [Hollingsworth v. Barbour] 4 Pet. [29 U. S.] 468; [Society for the Propagation of the Gospel v. Town of Pawlet] Id. 392. They will hold a case under advisement after argument, when it turns on a point of local law depending in a state court; and, though they will hold it not to be conclusive authority, will pay great respect to it. [Bank of Hamilton v. Dudley] 2 Pet. [27 U. S.] 520, 521. So where there had been an uniform course of professional opinion and practice. [Gardner v. Collins] 2 Pet. [27 U. S.] 85. The same rule will not be applicable to a single decision of a state court, where the supreme court of the United States had previously decided otherwise. [Shelby v. Guy] 11 Wheat. [24 U. S.] 367, 369. But we do not feel at liberty to make the exception in this case, especially as the legislature at their last session, with full knowledge of this course of decisions, have not made any change of the law as to the lien of judgments, though they have done it as to mortgages on land sold under a younger judgment. Though this is not a legislative construction of the fourth section of the act of 1705, yet it is an implied sanction of its judicial exposition. As the case of Rankin v. Scott was directly in favour of our construction of the law of the state, prior to Gurney v. Alexander, and was

decided only eight months afterwards, and first promulgated. it was not without some difficulty that we came to the conclusion, that though it was the decision of a court by whom our judgments can be revised we could not apply it to this case. An anxiety to administer the law of the state in this court, by the same rules which prevail in the highest judicial tribunal of the state; to be governed by the most liberal principles of comity and respect, which the supreme court of the United States have adopted in relation to state adjudication, and to give the most free construction to the thirty-fourth section which it can authorize, has induced us to this course. It is necessary to create confidence and preserve harmony between the courts, which, organised under different governments, administer the same laws; and this court ought never, unless in a very clear case, to decide in opposition to state laws or judicial decisions. Cases of doubt and difficulty should be referred to the supreme judicial tribunal of the union. Had the case of Scott v. Rankin been first decided (or arisen under the act of 1705) we should have followed it, though subsequent decisions of the state court had been different. The case of Huidekoper v. Douglass, 3 Cranch [7 U. S.] 1, has been uniformly adhered to in this court, though it turned on the construction of a land law of this state, which the supreme court of the state have ever since construed differently. But as the decision in Gurney v. Alexander was · first given, is decisive of the question, and has since been followed in all the courts of the state, we felt it our duty to instruct you, that the sale under the judgment against Hemphill gave the defendant.a title to the premises in question, unincumbered by the judgment of Wilson. It is satisfactory to us to know that the cause is in a train for the correction of any error we may have committed.

For reasons applicable to one of the judges, no opinion will be given on the fourth question made in the cause. Though we have referred to the act of 1705 in relation to mortgages, by way of illustration. we must be distinctly understood as expressing no opinion on the effect of a sale under a judgment. on a prior mortgage. The defendant, in our opinion, is entitled to your verdict.