IN THE

# SUPREME COURT

OF

# PENNSYLVANIA.

## Western District, September Term, 1809.

### JOHN BURD *against* The Lessee of DANSDALE.

2b 80
f38SC 2 2

*Pittsburgh,*
*Wednesday,*
*September 14.* *

IN ERROR.

UPON a writ of error to the Common Pleas of *Bedford* county, the case was thus:

If the judge in his charge expresses an opinion upon facts, which is not warranted by the evidence, the remedy is by a motion for a new trial, and not by a bill of exceptions.

The act of 24th *February* 1806, directing the judges to reduce their opinions to

*Dansdale,* the plaintiff below, brought an ejectment to *April* term 1805, for 150 acres of land in the township of *Dublin,* to which he proved the following title.

*John Burd* the elder was in his life time entitled to the premises in question, by virtue of an improvement. He died in the year 1792, having by his will devised the same to *Elizabeth Walker* his grand daughter in fee. *Elizabeth Walker,* in the year 1797, intermarried with *Charles Sipes* who had issue by her; and in *August* 1797, *Dansdale* obtained a judg-

writing, and to file them of record, makes no alteration as to those matters which are the object of revision upon a writ of error; and therefore the reasons of a judge for not granting a new trial, though filed of record, are not, however erroneous, subject to review upon a writ of error.

An inquisition is not necessary to the sale of an estate for life, or of any other estate of uncertain duration.

A sale of lands after the return day of the *venditioni exponas,* is not void, if the lands were advertised for sale on a day before, and the sale was continued by adjournment.

Where a levy is set aside, and a *vend. exp.* is issued without a fresh levy, a sale under it is void, and the purchaser derives no title. The 9th sec. of the act of 1705, protects a purchaser in the event of a reversal of the judgment under which the sale was made, but not where the sale was made under void process.

* This cause was decided at *September* term 1808; but the reporter did not obtain the opinion of the court, until it was too late to insert it in the series of that term.

ment against *Sipes*, issued a *fi. fa.* to *November* 1797, and levied upon the property. No inquisition was held to condemn the land, but it was sold to *Dansdale* under a *venditioni exponas*, and a deed acknowledged by the sheriff the 25th *February* 1800. *Sipes* and his wife were alive at the time of the trial.

The defendant set up, 1, A title in *Samuel Riddle.* 2, In *George Burd.*

*Riddle's title.* In *October* term 1784, *M. Sanderson* obtained a judgment against *John Burd* the elder. A *scire facias* to revive the judgment issued against *Benjamin Burd* and *William Elliot*, executors of *John Burd*, returnable to *November* 1797, when the judgment was revived. A *fi. fa.* issued to *January* 1798, and a levy made on the premises; a *venditioni exponas* to *April* 1798, and an *alias* to *August* 1798, under which the land was sold to *Riddle*, and a deed acknowledged by the sheriff the 31st *January* 1799.

*Burd's title.* On the 18th *January* 1793, *Benjamin Burd*, the executor of *John*, took out a warrant for 50 acres in the name of *Elizabeth Walker* and his son *John Burd*, calling for old *John Burd's* improvement, and on this warrant a survey was made the 28d *May* 1793 of 52 acres 129 perches. On the 18th *February* 1793 he took out another warrant for 100 acres adjoining the above in the name of his son *George Burd*, on which a survey was made the 23d *May* 1793 of 97 acres 27 perches. These two surveys comprehended the land in dispute. On the 23d *February* 1794, a patent was granted to *George Burd* for both surveys, reciting a conveyance from *Elizabeth Walker* and *John Burd.*

The defendant also took four exceptions to the plaintiff's title. 1, That the ejectment, being founded upon a title by improvement alone, was barred by the 5th sec. of the act of 26th *March* 1785, 2 *St. Laws* 281, there not having been peaceable possession under it, within seven years next before the action. 2, That *Sipes* had no estate which could be taken in execution. 3, That no inquest had been held under the *fi. fa.* 4, That the sale was after the return day of the *venditioni exponas.*

The plaintiff, in order to defeat *S. Riddle's* title, relied not only upon the staleness of the judgment on which it was founded, but upon the following entry on the execution doc-

1809.

JOHN BURD
*v.*
The Lessee
of
DANSDALE.

quet, in the handwriting of the prothonotary's clerk. " *M.* " *Sanderson* v. *Burd's Executors.* No. 33. *Vend. Exp.* to " *April* term 1798. Land not condemned at inquest. *Levy* " *set aside at April* 1798, to levy anew. Inquisition held, " and condemned. *Vend. Exp.* to *August* 1798. No. 26. re- " turned, lands sold to *S. Riddle* for 50*l.*" By which it appeared that the original levy was set aside, and the lands sold without a new levy.

The benefit of *George Burd's* patent, the plaintiff derived to himself by the following evidence. In the year 1786, the elder *Burd* leased the premises to one *William Gray* for ten years upon an improving lease. *Gray* deposed that in the summer of 1794, *Benjamin Burd,* who was executor of *John,* and *guardian* of *Elizabeth Walker,* came to him on the land with one *Stephen Keepers,* and told him that *Keepers,* who had bought the land, would take it for the unexpired time of the lease, and discharge him from his covenants to improve; and that accordingly he left the land in the autumn. The patent was granted to *George Burd* about six months before. *Elizabeth Walker* was a minor when the warrants were taken out. *John Burd* the younger and *George Burd* were also both minors, and sons of *Benjamin Burd.* If *Benjamin Burd's* design was to appropriate to himself or his family the property of his ward, it was a fraud, and by operation of law, the possession of *Keepers* and of any one under him was her possession, and the patent enured to her use; if his design was honest, then it was his intention that his son *George* should be her trustee, and of course he was a trustee for the plaintiff. And in order to prove that *Benjamin* had not advanced money in discharge of old *John Burd's* debts, so as to entitle himself to appropriate the 150 acres to his own use, the plaintiff offered in evidence the administration account of *Benjamin,* to which the defendant objected; but the court admitted it and the defendant took an exception.

The defendant then called the sheriff who executed the process in *Sanderson's* suit, to prove that the entry on the execution docket was made by mistake, and that it was not the levy but the inquisition that was set aside, and a new one ordered, which took place. The sheriff said that he did not recollect whether another inquisition was held, but from the marks of old wafers to the *fi. fa.,* and from the return to the

*vend. exp.* he was inclined to think, it was; but this was mere belief, his memory did not serve him, and he should have made the same return if another had not been held.

The evidence being closed, the defendant's counsel prayed the court to instruct the jury that the matters given in evidence by the plaintiff were not sufficient to entitle him to recover. But the court delivered in substance the following charge.

1809.

JOHN BURD
*v.*
The Lessee
of
DANSDALE.

*Walker* President. The plaintiff in this cause claims 10 acres of arable, and 140 acres of woodland, to prove his title to which, he has given in evidence a judgment rendered by this court at *August* term 1797, at the suit of *G. Dansdale* against *C. Sipes,* a *fi. fa.* to *November* term 1797, with the levy thereon indorsed, a *vend. exp.* an *alias* and *pluries,* upon the latter of which the sheriff returned land sold to *G. Dansdale* for eight dollars on the 31st *January* 1799. He has also produced to you a sheriff's deed for the premises dated the 25th *February* 1800. These proceedings vest in the lessor of the plaintiff all the title of *C. Sipes.* To shew you that *C. Sipes* had title to the premises, the plaintiff has produced the will of *John Burd* deceased, by which the land in question is devised to *E. Walker.* He has also produced to you *W. Gray,* who says that *E. Walker* intermarried with *Sipes* previous to *August* 1797, that he, *Gray,* took a lease of *John Burd* in the year 1786 for 10 years, built a cabin, cleared land, and resided on the premises about 8 years, and was in possession at the death of *John Burd* the elder. This witness also says that after the death of *John Burd, B. Burd,* who had sold the premises to *Keepers,* induced the witness to give the possession to *Keepers* in consideration of being released from such covenants as to improvements as remained to be performed by the witness. The land in question was at the death of *John Burd* held by improvements. *Gray* having taken a lease and made a *bona fide* improvement under *J. Burd,* such a title accrued to *J. Burd* as could be devised, and by law *Gray* became the tenant of the devisee. *Benjamin Burd* was testamentary guardian of *E. Walker,* and *Gray* was tenant to him as such. *Gray,* by direction of *B. Burd,* gave up the possession to *Keepers.* The person who came into possession under *Gray* at the instance of *B. Burd,*

the guardian of *E. Walker*, must be considered as her tenant. *J. Burd* died in 1792. *Gray's* lease did not expire until 1796. The two warrants which have been given in evidence were taken out in 1793, and a patent issued to *George Burd*, in which is recited a deed from *E. Walker* and *J. Burd*. It has been contended that this ejectment not having been brought within seven years from the desertion of the improvement by *Gray*, is barred. But does the law cited by the defendant apply? It does not. 1st, Because the possession was obtained by *B. Burd*, the guardian of *E. Walker*. This possession and the taking out of the warrants must be considered either as fair or fraudulent. If fair, then these warrants were taken for her use. 2d, If the possession and warrants were not taken for her use, then there was a fraud practised by the guardian, and the warrants would enure to the use of his ward; for if it was permitted to a guardian to take out a warrant to cover for his own use the property belonging to his ward, the court would be called on to sanction a fraud.

But it has been contended that *C. Sipes*, by his marriage with *E. Walker*, did not acquire such estate in the premises as could be sold and transferred by the sheriff pursuant to the act of assembly authorizing the sale of lands, &c. This act authorizes the sale of lands; and it would be absurd if the greatest estate could be sold, and a less estate could not.

It has been objected that no inquisition was held. The holding of an inquisition is necessary, only where the plaintiff could hold the land for seven years. In this case no inquisition was necessary, as an estate only for the life of *E. Walker* could be sold, which might terminate in less than one year.

It was also objected that the *vend. exp.* of the plaintiff was returned before the sale. But a *venditioni exponas* is not necessary, to the validity of the sale of such an estate as is now in question. It might have been sold on the *fi. fa.* as a chattel. We are therefore of opinion that the sale was legal, whether the return day of the *venditioni* was past or not. The two warrants have something extraordinary in their appearance. The reason of taking *two* warrants is uncertain; whether to avoid interest, or to limit the claim of *E. Walker*, is uncertain; but in either case the warrants must be presumed to be taken for her use.

The next question is on the title of the defendant. It is founded on a judgment entered against *John Burd* in 1784; and what is a little remarkable, is, that this judgment had slept till about the time execution issued at the suit of *Dansdale* against *Sipes*. This circumstance ought to be considered by you. The length of time that elapsed from the entry of the judgment to the issuing of the *scire facias*, is not sufficient to raise a legal presumption that the judgment was paid; but it is for you to presume whether this judgment was not pressed at the instance of *Benjamin Burd*, and whether the sale was not to enure for his use, or to the use of *Keepers*, who purchased of him. The *fi. fa.* at the suit of *Sanderson* issued regularly; a *vend. exp.* and *alias* were issued, upon the latter of which the sheriff returns a sale to Mr. *Riddle;* but an entry appears on the execution docquet in the handwriting of Mr. *Breck*, a clerk in the office, at *April* term 1798, *levy set aside*. In *July* 1798, an inquisition was held, and the land condemned. What is the operation of all this? It has been alleged that this entry was made by mistake, and that it was not the levy, but a former inquisition that was set aside. But the defendant has failed in proving this allegation. It has been urged by the defendant that at this time the purchaser is not to be affected by the entry on the docquet, and that this jury cannot inquire into the regularity of the sale. The act of assembly says that the title of the purchaser shall not be affected by the *reversal* of the *judgment*, on which the sale shall be had; but that is not the case before us. We must take the record to be true; the levy was set aside, and therefore the *venditioni exponas* was a nullity. The person who purchased, was the attorney of the plaintiff, and must have been conusant of this fact, though he might have forgotten it; the levy having been set aside, the sale falls of course.

But it has been urged that the legal title having been vested in *George Burd*, by patent, in the year 1794, the plaintiff cannot recover. If we are right in what we have before said, that *Benjamin Burd* acted as guardian of *E. Walker* in taking out these warrants, the defendant cannot set up a right in a third person, which was procured by her guardian.

It is the unanimous opinion of the Court, that the plaintiff

1809.

JOHN BURD
*v.*
The Lessee
of
DANSDALE.

is entitled to recover the whole of the land described by the two warrants.

To this charge the defendant's counsel excepted, and the jury found for the plaintiff. A motion was then made for a new trial, the reasons for refusing which, the Court reduced to writing, and filed of record agreeably to the 25th sec. of the act of 24th *February* 1806. 7 *St. Laws* 345. These reasons came up with the record; but from the judgment of this court, it will be seen that they were immaterial.

*S. Riddle* and *Ross*, for the plaintiff in error, argued the cause upon the following exceptions: upon which, with others, they relied for the reversal of the judgment.

They contended that the court below had erred,

1. In the admission of *B. Burd's* administration account in evidence.

That they had also erred in their charge to the jury, in giving their opinion

2. That the warrants taken out by *B. Burd* must be presumed to be for the use of *Elizabeth Walker*.

3. That the defendant had failed to prove that the entry on the execution docquet was made by mistake.

4. That the plaintiff was not barred by the statute of limitations.

5. That the plaintiff was entitled to recover.

That there was error appearing upon the record

6. In the refusal of a new trial.

And that the charge was erroneous, in the opinions given upon these additional points,

7. That *Sipes* had such an estate as could be taken in execution.

8. That an inquisition was not essential to give validity to the sale of *Sipes's* estate.

9. That the sale, after the return day of the *venditioni exponas*, was not void; and

10. That the sale to *Samuel Riddle* was void, and passed no title, because the levy had been set aside.

*Baldwin* for the defendant in error, answered that the

1st Exception was not to be maintained, because the account was competent evidence to shew that *B. Burd* had not, by any payments for *John Burd's* estate, entitled himself to the beneficial interest in the land. That the suit was in fact between the plaintiff and *Benjamin Burd*, whose interest the tenant in possession represented; for *Benjamin Burd* had taken out the warrants and patent in the name of his minor children, sold the land to *Keepers*, and was the principal mover against the plaintiff's title; of course it was his title that was set up against the plaintiff. That the

2d and 3d Exceptions went to the opinion of the court upon matters of fact, which could not be error in law. *Graham* v. *Cammann*, (a) *Gibson* v. *Hunter*, (b) *T. Ray.* 405. That the

4th Exception failed in point of foundation, because the plaintiff did not claim under a title by improvement *only*, but as *cestuy que trust* of the patentee *George Burd*. That the

5th Exception was contained in the others. So far as the plaintiff was entitled to recover in point of fact, the opinion of the court in the conclusion of the charge was an opinion upon fact, in which there could be no error. So far as it was an opinion upon the law, it merely included the distinct opinions noticed in the other exceptions. That the

6th Exception was a novelty. There could be no error in the refusal of a motion for a new trial; and the act of 1806, made no difference as to what was or was not error, but merely increased the responsibility of the judge by requiring his reasons in writing. That the

7th Was not correct in point of law. *Sipes* was tenant by the curtesy initiate for his own life, or was entitled to the possession and profits as husband, either of which estates was subject to execution. That the

8th Exception proceeded upon a mistake in not distinguishing between such estates as would certainly endure for seven years, and such as might not last a day. The object of the inquest was to deliver the land to the plaintiff, if it would pay the debt in seven years; but where the defendant did not

1809.

JOHN BURD
*v.*
The Lessee
of
DANSDALE.

(a) 2 *Caines* 168.     (b) 2 *H. Black.* 205.

1809.

JOHN BURD
v.
The Lessee
of
DANSDALE.

own the land for seven years certain, the inquest was useless. That the 9th Exception fell with the 8th, for where there was no occasion for an inquest, there was none for a *venditioni*. The practice however had been to sell after the return day. The 10th Exception supposed the purchaser to be protected by act of assembly, or that a levy was not necessary. The act protected the purchaser at sheriff's sale from a reversal of the judgment, but not from the consequences of a sale without authority. The levy was essential to the sale, if it was set aside there was no authority for the sale; there was in fact no sale, and nothing passed.

TILGHMAN C. J. Delivered the Court's opinion.

This is a writ of error to the Court of Common Pleas of *Bedford* county. In the course of the trial the defendant took exceptions to the opinion of the Court, respecting the admission of some testimony, and respecting several points of law mentioned in the judge's charge to the jury. To understand these exceptions, it is necessary to state some of the evidence inserted in the record.

[Here the Chief Justice stated the evidence.]

1. The first exception to the Court's opinion, was that the plaintiff below was permitted to give in evidence the administrator's account, settled by *Benjamin Burd*, on the estate of his father *John Burd*.

The court are of opinion, that it would be going too far to say that this account might not have been material evidence. As the plaintiff below claimed under a trust in favour of *E. Walker*, it might be of consequence that the jury should know the situation of old *John Burd's* estate; for if *Benjamin Burd* had paid away correctly all the personal estate, and likewise advanced money of his own to discharge his father's debts, it might have been said that he had a right to appropriate the 150 acres of land devised to *E. Walker*, to his own use. On the contrary there would be no pretence for such appropriation, if he had not made such advances. We think therefore that it was proper to admit the account as evidence.

2. 3. The 2d and 3d exceptions are, that the court below gave their opinion on certain facts more strongly in favour of the plaintiff than the evidence warranted. This Court are of opinion, that the opinion of a judge concerning facts delivered in his charge, is not the object of a writ of error. The jury, not the court, are triers of facts. The judge may intimate his opinion, but the jury are not bound by it. If the judge in charging the jury, expresses an opinion on facts not warranted by the evidence, it is very possible that the verdict may be influenced by it; but we know of no other remedy than by an appeal to the candor and justice of the court, by a motion for a new trial.

4. The 4th exception is, that the court below delivered their opinion, that the act of limitation (26th *March* 1785,) was no bar to the plaintiff's ejectment. If the plaintiff below had claimed under an improvement right *only*, his ejectment could not have been supported, unless there had been possession within seven years before the suit was brought; but inasmuch as the plaintiff claimed under the *patent*, we are of opinion that he was not barred by the act of limitation.

5. The 5th exception is, that the court went too far in giving their opinion to the jury, that the plaintiff was entitled to recover. This must be considered as a mixed opinion on law and fact. As to the *law*, it was no more than the general result of the court's opinion, on the several particular points to which the judge had spoken in his charge. Supposing therefore that there was no error in the opinion delivered on those particular points, this court do not think that there would be error in the general opinion, expressed in the conclusion of the charge.

6. The 6th exception is, that the court refused to grant a new trial, on the motion of the defendant below. This exception involves the consideration of the act of 24th *February* 1806, sec. 25. By this section it is enacted, that in all cases in which the judges holding the Supreme Court, Court of Nisi Prius, Circuit Court, or presidents of the courts of Common Pleas, shall deliver the opinion of the court, if either party shall require it, it shall be the duty of the said judges respectively to reduce the opinion so given with their reasons therefor, to writing, and file the same of record in the cause. The counsel for the plaintiff in error, have con-

1809.

JOHN BURD
*v.*
The Lessee
of
DANSDALE.

cluded that by virtue of this law, every opinion delivered by the court upon every motion in a cause, before or after trial, may be reviewed by the superior court on a writ of error. This construction would lead to such delay, expense and vexation, that it is not to be adopted, unless it manifestly appears that such was the intention of the legislature. It is urged that there is no use in putting an opinion on record, but for the purpose of having it reviewed by a superior court. But if this only was the object, why are the reasons for the opinion directed to be put on record? It appears to us that this provision was intended to increase the responsibility of judges in making their decisions. It must excite great caution, when the name of the judge, his decision, and his reasons are placed on record. That that was the object of the legislature, may be strongly inferred from this circumstance, that the law is expressly applied to the judges holding the *Supreme* Court, from which there is *no appeal.*

As to motions for new trials, they are often founded, not upon strict laws, but upon equitable circumstances, in which much is left to the discretion of the judge. New trials have been refused when verdicts have been directly against law, in cases where the plaintiff's claim has been of a very hard nature, or where the matter in dispute has not been worth the expense and trouble of another trial; or on the party in whose favour the verdict has been given, consenting to conditions which the court has judged reasonable; such as not taking advantage of the act of limitation, if the plaintiff should bring a new ejectment. Sometimes new trials are asked, because the charge of the court has been against law. There is no occasion for an appeal there, because the party complaining may except to the court's opinion, and carry the point before the superior court by writ of error. Sometimes the verdict is alleged to be against evidence. If that was to be the object of a writ of error, the whole evidence must be placed on the record. Besides, a writ of error founded on a mistake of the jury in deciding facts, would be a novelty in our jurisprudence. In the Circuit Court indeed, on motions for new trials, an appeal lies to the Supreme Court by the act of assembly establishing the circuit courts; but these circuit courts are held by one of the judges of the Supreme Court, just as the courts of Nisi Prius formerly were, and in case

of an appeal on a motion for a new trial, the evidence is not placed on record, but the judge before whom the cause was tried, reports it from his notes. In short the business is conducted just as it used to be, when a motion in bank was made for a new trial of a cause which had been tried at Nisi Prius. Upon the whole the court are clearly of opinion, that the act directing the judges of all courts, to reduce their opinions to writing, and file them of record at the request of either party, makes no alteration as to those matters which are the objects of revision in this court by writ of error. It was decided by the High Court of Errors and Appeals at their last session, that a writ of error did not lie on the decision of the Supreme Court on a motion unconnected with the trial of a cause. We are therefore of opinion that there was no error of which this court can take cognizance, in the refusal to grant a new trial.

7. The 7th exception is, that the estate of *Sipes* was not such as could be levied on and sold by execution. We think there is no weight in this exception. The husband is entitled to the possession and use of his wife's land during the coverture, whether he has issue or not; but here he had issue. He may alien his interest, and of consequence it may be taken in execution for his debts.

8. The 8th exception is, that no inquisition was held before the sale of the land taken in execution. To this it has been well answered that no inquisition was necessary. The only use of an inquisition is to ascertain whether the rents and profits will discharge the judgment in seven years; in which case the land is not to be sold, but delivered to the plaintiff till the judgment is satisfied. But where the defendant has an uncertain interest, such as an estate for life, it is unknown, whether it will last seven years, and consequently it cannot be delivered for seven years. This point has been decided by this court long ago.

9. The 9th exception is, that the sale was not made until after the return of the *venditioni exponas*. It has been so common a practice to advertize the sale of lands on a day previous to the return of the *venditioni exponas*, and to continue the sale by adjournment until after the return of the writ, that this court would hardly think themselves justified in determining such sales to be void. But in the present case where

no inquisition was requisite, it deserves to be considered whether a writ of *venditioni exponas* was necessary, and whether the sheriff might not sell by virtue of the *fi. fa.* which commands him to make the debt out of the defendant's lands and tenements. On this however the court would not be understood to express a decided sentiment.

10. The 10th exception is to the court's opinion, that the sale to *Samuel Riddle* by virtue of the *venditioni exponas* on the judgment against *John Burd's* executors was void, because the court had set aside the levy on *John Burd's* land, previous to the issuing the writ of *venditioni exponas.* The record was produced, shewing an order of the court to set aside the levy. The defendant below endeavoured to prove that this entry was made by mistake, and that the court never made an order to set aside the levy. The court below told the jury that the defendant had failed in his proof. Whether he failed nor not, is not a matter for our consideration. It was a fact to be decided by the jury. All that we have to determine is, whether the sheriff's sale was good, supposing the court had set aside the levy. Our opinion is that in such a case the sale was void, the *venditioni exponas* having issued contrary to the order of the court. We have an act of assembly providing that purchasers at sheriff's sales shall not be affected by the reversal of the judgment under which the sale was made. But there is no law protecting the purchaser in a case like the present. It is obvious that the debts of old *John Burd* must be paid in the first instance before his devisees can take under his will. But Mr. *Riddle* must remove the present legal impediment, before he can recover against the purchaser under a devisee.

Several other exceptions were taken by the counsel for the plaintiff in error, on which the court do not think it necessary to give an opinion, because they are founded on points on which no opinion was given by the court below. We are now deciding on a bill of exceptions, and are confined to the exceptions taken on the trial, or such points as are stated by the judge in his charge to the jury. It is not like the case of a special verdict, where the plaintiff cannot recover unless every fact necessary to complete his title appears on the record. Perhaps if the additional points now made, had been urged on the trial, they might have been obviated by new

evidence on the part of the plaintiff below. Indeed it does not certainly appear that all the evidence actually given is placed on the record.

On the whole the court are of opinion that the judgment of the Court of Common Pleas of *Bedford* county be affirmed.

Judgment affirmed.