## Cash *against* Tozer.

1ws519
L196 430

Upon a written waiver of an inquisition by a defendant whose real estate is seized in execution, the sheriff shall proceed to sell upon the *fieri facias before* the return day thereof, without any further writ: but a sale made *after* the return day, although continued by adjournment from a day prior, is void, and vests no title in the purchaser.

A judgment entered upon a warrant sealed by a partner in the name of his firm, binds no one but himself; but a subsequent revival of it, by the attorney of all the partners, cures the irregularity.

ERROR to the Special Court of Common Pleas of *Bradford* county.

This was an action of *assumpsit* by Guy Tozer, sheriff of Bradford county, to recover from David Cash and John L. Webb the sum of $4900, bid by them for a tract of land and steam-mill thereon erected. The plaintiff set out in his declaration:

" For that whereas, heretofore, to wit, on the 11th day of May, in the year one thousand eight hundred and thirty-seven, at Towanda, &c., the said Guy Tozer, as sheriff of said county, had in his hands a writ of *fieri facias*, issued, &c., commanding him, that of the goods and chattels, lands and tenements of T. C. Smart, Jr., Joseph S. Fowler, and Benjamin Marshall, Jr., he should cause to be levied a certain debt of two thousand five hundred and sixty-four dollars and seventy-five cents, which sum Avery Gore had then lately recovered against them, the said T. C. Smart, Jr., Joseph S. Fowler, and Benjamin Marshall, Jr., in said court. By virtue of which said writ, the said sheriff had, be-

[Cash v. Tozer.]

fore then, to wit, on the 10th day of March, in the year aforesaid, levied, among other lands, upon a tract or parcel of land in Sheshequin township, in said county, containing about six hundred acres of land, more or less, as the same was conveyed by Henry S. and James Mercur to Benjamin Marshall, Jr., there being about sixty acres improved, with two framed dwellings, and a framed barn, and large steam-mill, together with a railroad for hauling logs and lumber. Which said tract of land, with the appurtenances, by virtue of the said writ, and the proceedings thereon, in pursuance of the laws of this commonwealth in such case made and provided, the said sheriff was authorized to expose to sale, at public vendue or out-cry. In pursuance whereof, also, the said Guy Tozer, sheriff as aforesaid, on the 11th day of May, one thousand eight hundred and thirty-seven, at Towanda, in the county aforesaid, after having given due and timely notice of the time and place of sale, exposed the same for sale, by public vendue or out-cry. Whereupon the said David Cash and John L. Webb did, then and there, bid and offer to the said sheriff, for the said tract of land, the sum of four thousand and nine hundred dollars, which sum was the highest and best price bidden for said land. And the said sheriff, then and there, in consideration of the said bid, and offer of the said bid, and offer of the said sum of four thousand and nine hundred dollars, and at the special instance and request of the said David Cash and John L. Webb, struck down and sold the said tract of land, with the appurtenances, to them, the said David Cash and John L. Webb; in consideration of which said sale, the said David Cash and John L. Webb undertook, and then and there faithfully promised the said Guy Tozer, sheriff as aforesaid, to pay him the said sum of four thousand nine hundred dollars, when they, the said David Cash and John L. Webb, should be thereunto afterwards requested: And the said Guy Tozer avers, that afterwards, to wit, on the 15th day of February, in the year one thousand eight hundred and thirty-eight, at &c., he tendered and offered to deliver to them, the said David Cash and John L. Webb, a deed of the said land, duly acknowledged in open court, according to law, and requested them to pay him the said sum of money. Yet the said David Cash and John L. Webb their said promise and undertaking not regarding, but contriving and intending, craftily and subtilely, to defraud and injure the said Guy Tozer in this behalf, have not, as yet, although often requested, paid to him the said Guy Tozer, the said sum of four thousand nine hundred dollars, or any part thereof, but so to do have hitherto neglected and refused, and still do neglect and refuse, to the damage of the said Guy Tozer, sheriff as aforesaid, ten thousand dollars, and therefore he brings suit," &c.

The defendants pleaded *non assumpsit*, and the following special plea:

That the said Guy Tozer ought not to have or maintain his

[Cash v. Tozer.]

aforesaid action thereof against them; because, they say that after the said supposed sale, by the said Guy Tozer to them, the said David Cash and John L. Webb, and the making the said supposed promise by them to the said Guy Tozer, on the said 11th day of May, in the said year, one thousand eight hundred and thirty-seven, as above set forth in the declaration of the said Guy Tozer, and before the said supposed acknowledgment and tender to them of a deed, by him, the said Guy Tozer, for the lands and tenements described in said declaration, with the appurtenances thereof, on the said 15th day of February, in the said year one thousand eight hundred and thirty-eight, to wit, on the 1st day of October, in the said year one thousand eight hundred and thirty-seven, the said large steam-mill on said lands at the time of the said sale and making the said promise, and included in the said sale to them as a part of the said premises, the same being of great value, to wit, of the value of two thousand dollars, and essential to the profitable enjoyment of the said lands and tenements, with the appurtenances, was, casually, destroyed by fire. And this they, the said David Cash and John L. Webb, are ready to verify; wherefore, they pray judgment, if the said Guy Tozer, Esq., ought to have or maintain his aforesaid action thereof against them, &c.

To this special plea the plaintiff demurred, and the defendant joined in the demurrer. Whereupon the court rendered a judgment for the plaintiff.

The plaintiff then gave in evidence a bond and warrant of attorney to enter judgment, signed " T. C. Smart, Jr.; & Co.," and the judgment thereon *in* favour of Avery Gore against T. C. Smart, Jr., & Co., entered 1st of April 1835. An amicable *scire facias* thereon against T. C. Smart, Joseph S. Fowler, and Benjamin Marshall, Jr., late partners under the firm of T. C. Smart, Jr., & Co., in which the defendants appear by attorney and confess judgment of revival for the sum of $2564.70 on the 16th of February 1837: *fieri facias* to May Term 1837, returnable the 8th of May, levied on the land and mill described in the plaintiff's declaration, and the following agreement annexed to it :

" The defendants hereby waive all right of inquisition, and consent that the same may be sold on the *fieri facias.* 6th of April 1837." Signed, " T. C. Smart, Jr., Joseph S. Fowler, by their attorney, B. Marshall, Jr., B. Marshall, Jr."

The plaintiff then gave in evidence the power of attorney, by authority of which the said paper was executed: return of the sheriff to the *fieri facias* as follows :

" To the honourable the judges within named, I certify that after giving due and timely notice of the sale of the within described land, I offered the same for sale on Monday the 8th day of May; the sale was adjourned by consent until Thursday the 11th, when the sale was resumed, and one lot of this land was

struck off to J. L. Webb and David Cash for four thousand nine hundred dollars; the other lots struck off to Edward Overton for eleven hundred and fifteen dollars. So answers Guy Tozer, sheriff." "Purchase money not paid in by John L. Webb and David Cash."

The plaintiff then proved by a witness that the property was struck down to the defendants at their bid of $4900.

The defendants then, to maintain the issue on their part, gave in evidence the papers filed in the case of the original judgment, as follows:

"Avery Gore ⎞ Rule to show cause why the sale in this
      *v.*   ⎬ case should not be set aside.
T. C. Smart, et al. ⎠

The following reasons are alleged:

1. That the advertisement gives a defective and insufficient description of the improvements upon the property, and of the parties to the suit upon which the sale was made.

2. That the land was sold upon a *fieri facias,* and that no sufficient waiver of inquisition appeared upon the record, and the sale was made after the return day of the writ.

3. The original irregularity of the entry of judgment, and the revival upon the same."

And which was endorsed, "Filed Sept. 1837." Exceptions signed by David Cash as follows, to wit:

"David Cash and John L. Webb, the purchasers to whom the property sold in this case was struck off, object to the confirmation of the sale to them, and to the acknowledgment of the deed, and pray relief from the court for the following and other reasons:

1st. The property was sold by the sheriff as the property of T. C. Smart, Jr., Benjamin Marshall, and Joseph S. Fowler. The judgment is against 'T. C. Smart, Jr., & Co.;' and as against all the defendants is irregular; and title under the sale on this judgment does not give to the purchasers the interest which the sheriff proposed to sell.

2d. The sale was made on a *fieri facias,* after the return day; there being no waiver of inquisition filed in the proper court, and so no authority to the sheriff to sell. The authority, if any, to Benjamin Marshall, from Fowler and Smart, to waive inquisition, was never filed nor recorded, and the actual waiver does not appear to have been ever filed.

3d. That the purchase was made in view of the value of the property in May last, at which time it was expected a valid deed would be made and acknowledged; that upon examining the record, the defects in the judgment and sale were discovered. No deed was offered to be acknowledged at May Term. At September Term, younger judgment creditors objected to the sale; and the purchasers through their counsel, W. Jessup, gave notice on

[Cash v. Tozer.]

the matter being moved in court, to Mr Conyngham, counsel for plaintiff, that the purchasers objected to the sale, on the ground of the irregularities in the judgment and process. And upon such notice the plaintiff's counsel moved the continuance to the next term, in order to procure the power of attorney from Smart and Fowler to Marshall, then alleged to be in Marshall's possession, in Susquehanna county; and the rule was continued to December Term.

4th. That after the September Term, and before the December Term, the most valuable part of said property was destroyed by fire, casually communicated.

5th. That at the time of sale, the sheriff had no authority to sell, and if purchasers had taken his deed, it would have vested no title in them. David Cash."

And which was endorsed, "Filed February 3d 1838."

"On objections to the confirmation of sale and acknowledgment of deed, by purchasers.

It is admitted that the steam-mill which was on the property sold, at the time of the sale valued two thousand dollars, was destroyed by fire casually communicated, between the September and December Court.

It is also admitted that the rule to show cause in this case, was continued at the September Term, under the following circumstances, to wit: when the rule was mentioned in court, J. N. Conyngham, Esq., who appeared as counsel in opposition to the rule, asked W. Jessup, counsel for purchasers, if the purchasers intended to make any objections to the sale. William Jessup replied they did. Mr Conyngham then said they had not obtained a power of attorney, then supposed to be in the hands of Marshall, in Susquehanna county, and they could not proceed without it. The rule was then continued to December Term. Jessup for purchasers."

And which was endorsed, "Filed February 15th 1838."

Upon all the evidence in the cause, the court below was of opinion, and so instructed the jury, that the decision of the Court of Common Pleas upon the exceptions to the sheriff's sale and acknowledgment of the deed, were final and conclusive, and their regularity could not now be inquired into, and that the plaintiff was entitled to recover in this action.

*Case* and *Greenough*, for plaintiff in error. The demurrer raises two questions: Whether the declaration lays a sufficient cause of action? It sets out a parol sale of land, which is in violation of the Statute of Frauds. There was no note in writing made of the sale to the defendants, and therefore there can be no specific performance enforced. Sheriffs' sales are not excepted from the operation of the Act. 7 *Serg. & Rawle* 369; 2 *Caines*

[Cash v. Tozer.]

61; 2 *Johns.* 248; 8 *Johns.* 520; 1 *Esp. N. P.* 107; *Rob. on Frauds*
112; 1 *Bos. & Pull.* 306; 2 *Bar. & Cres.* 945; 7 *Vez.* 341; 8 *Term
Rep.* 151; 1 *Vez.* 221.

The facts set forth in the plea, amount to a just defence. The
sale was made in May 1837. The mill was burnt in October fol-
lowing, and the deed was not tendered until February 1838. The
defendants were not then bound to take the deed; the delay occa-
sioned the loss, by leaving the property exposed without care:
there is, therefore, a failure of consideration. 1 *Fonb. Eq.* 370;
2 *P. Wms.* 220. When the title is conveyed, the purchaser must
bear the loss; if not, the vendor must bear it. 2 *Vern.* 280;
1 *P. Wms.* 62; 7 *Bro. P. C.* 184; *Cro. Car.* 156; 2 *Camp.* 240;
6 *Vez.* 349; *Sug. Ven.* 200, *notes.* We had no such title as
enabled us to take charge of the property. 2 *Camp.* 240; 11 *Vez.*
559; *Sug. Ven.* 40; 13 *Vez.* 518; 2 *Vez.* 335; 5 *Serg. & Rawle*
157; 2 *Rawle* 276; 1 *Penn. R.* 402.

The original judgment was not a lien upon the land: there are
three partners, and it does not appear which of them signed the
bond and warrant. 10 *Watts* 51. By the 45th section of the
Act of 16th of June 1836, *Purd. Dig.* 417, the sheriff is autho-
rized to sell *before* the return day of his writ, but in this case he
sold after the return day, and the sale was therefore void. 7 *Watts*
305. The decision of the Common Pleas upon the objections to
the sheriff's acknowledgment of the deed, is not conclusive; nor
should it be as a question of expediency, inasmuch as such ques-
tions are always important in amount, and there is no appeal, nor
will a writ of error lie. 2 *Serg. & Rawle* 426.

*Williston* and *Overton,* for defendant in error, argued that inas-
much as a sheriff was an officer of the law, and not a vendor, a
sale by him was not within the operation of the Statute of Frauds,
and need not be in writing. All that is decided in the case in 2
*Camp.* 240, is that a purchaser at sheriff's sale cannot maintain
ejectment without a deed. The practice, which is believed to be
uniform throughout the state, should settle the law that no writ-
ing is necessary to bind the purchaser: clearly, by the Act of
Assembly, the sheriff may be compelled to execute the deed.—*See
sections* 94, 102, *and* 103, *Title Execution;* 7.*Serg. & Rawle* 369,
197; 10 *Serg. & Rawle* 207; 2 *Penn. Rep.* 18; 3 *Whart.* 24; *Sug.
Ven.* 43. The sheriff has no power to enter into a written agree-
ment; his authority is contained in the writ; he returns to the
court what he has done; and, if all be right, he is permitted to
acknowledge and deliver his deed.

The facts in the special plea do not amount to a defence. It
was the duty of the defendants to tender the purchase money,
which they did not. If a loss happens before the conveyance is
made, it falls upon the purchaser. 1 *Mad. Chan.* 336; 19 *Law
Lib.* 54; 10 *Watts* 20; 3 *Whart.* 25; 7 *Watts* 437.

[Cash v. Tozer.]

As to the sale after the return day : it has been the uniform practice, and it is attended with great convenience and advantage, to sell on the return day, or on a subsequent day to which the sale is continued ; and the legislature did not intend to change the practice by providing that the sheriff *may* sell *before* the return day ; all that was intended, seems to have been to save the expense and delay consequent upon a *venditioni exponas*.

But the decision by a court of competent jurisdiction is conclusive. The objections to the regularity of the sheriff's sale were made the subject of exception to the acknowledgment of the deed, and were heard and decided ; they cannot, therefore, be heard again in this collateral inquiry. 6 *Mass.* 286 ; 4 *Rawle* 285 ; 2 *Binn.* 227 ; 2 *Rawle* 164 ; 4 *Watts* 251 ; 14 *Serg. & Rawle* 173 ; 1 *Johns. Chan.* 91 ; 17 *Serg. & Rawle* 278 ; 14 *Serg. & Rawle* 183. If the court had decided against the regularity of the sale, it would have been conclusive ; it should therefore be mutually so.

The opinion of the Court was delivered by

GIBSON, C. J.—Whether the defendants below were released from their purchase by unnecessary delay in the completion of it, which kept them, as it is supposed, out of the possession and care of the property till a great part of it was destroyed, does not sufficiently appear from the special plea, which was the subject of the demurrer, and which stated the fact of destruction, but no more. Enough to show the sale incurably defective in another respect appeared in trying the issue of fact ; and it would be useless to inquire into anything beside.

The foundation of the judgment on which the premises were sold, was a bond and warrant sealed by a partner in the name of his firm ; which consequently bound no one but himself. It was entered by the prothonotary, pursuant to the statute, without the agency of an attorney ; and as there was no appearance for the other partners, they were not parties to the judgment, nor bound by it. But they subsequently became parties, by an agreement of their counsel, to a judgment of revival by *scire facias*, which is, by our practice—unlike what it is elsewhere—not an award of execution on the original judgment, but itself an original judgment ; and so far all was regular. The original warrant contained a power to waive condemnation ; but there was at first no waiver by any one ; and it is to be remembered that it is the separate estate of one of the partners who were originally not bound, which was subsequently sold. A *fieri facias*, however, was issued on the revived judgment, to May Term 1837, on which the sheriff returned that he had seized the premises in execution, and having offered them for sale on the 8th of May, the return day of the writ, had adjourned the sale from day to day, till he sold them to the defendants on the 11th ; and he further returned a written agree-

[Cash v. Tozer.]

ment, signed by one of the partners for himself, and as attorney for his fellows, to waive an inquisition of condemnation, and let the property be sold on the *fieri facias*. The power of attorney produced in support of this agreement is very broad. It bears that this particular partner shall have authority to do, execute, and deliver, all such acts, notes, or deeds, as he may think expedient, touching the debts and concerns of the partnership, and for the settlement of its debts; to confess judgments against the partners, or either of them; to collect the debts due to the firm; to give acquittances: and generally to do all other acts necessary to be done about the partnership concerns, which the absent partners themselves could do. This possibly authorized him to bind them individually by any agreement which they themselves might have made; but did he agree to a sale after the return day of the writ? The agreement was explicit, that the sheriff might sell without an inquisition; but no further latitude was allowed him. The sale was adjourned from time to time by consent, but of whom is not stated; and it is not shown, either by parol or in writing, to have been by consent of him whose estate was to be devested. Under these circumstances then, was it valid or void?

The forty-fifth section of the revised Act of 1836, directs that on the written waiver of an inquisition by a defendant whose real estate is seized in execution, the sheriff " shall proceed to sell such estate on the writ of *fieri facias before* the return day thereof, without any further writ." It had been a sanctioned practice to sell after the return day of the *venditioni exponas*, while the writ remained actually in the sheriff's hands; and did the object appear to be no more than to put the *fieri facias* on a level with that writ, we would be bound to say the legislature had done no more by enactment in regard to the one, than the courts had done by decision in regard to the other. The supposed advantage, however, of selling at the ensuing court, would not induce us again to sanction a practice so anomalous, even were it a matter of first impression, and unregulated by any statutory provision. But the advantage of the practice was less real than imaginary. That those who wish to purchase, will attend a sale as readily in vacation as in term time, is proved by the practice which obtains in some of our counties, of selling with advantage on the premises; while, on the other hand, it is evident that to sell in the presence of a crowd of indifferent spectators attracted to the spot by accident or curiosity, can add little to the bidding. But the statute has left nothing to interpretation; and we are consequently to be governed by the words of it, which are peremptory that the sheriff shall sell before the return day of the writ; consequently a sale after it is of no more force than if it were made without judgment or execution. In truth, the matter stood so at the common law, which the statute has only restored. The object was doubtless to put an end to the illegitimate practice that had crept in;

[Cash v. Tozer.]

and we are not ready to say that such a sale would conclude the debtor, even if made with his assent. It will be time enough, however, to decide that when it is directly before us. Here there is no pretence that he or his attorney assented to any thing but the waiver of an inquisition; and when his title has not passed, as it did not here, the price of it cannot be recovered.

Another objection to the sale has been made on a supposition that it was void by the Statute of Frauds; which it is unnecessary to consider. There was also an exception to the sheriff's return as evidence of the sale, which was clearly untenable, the very point having been decided in *Hyskill* v. *Givin*, (7 *Serg. & Rawle* 369) for reasons which it is unnecessary to repeat. Such a return is unquestionable evidence between third persons; and in this instance, where the creditors are the only parties beneficially concerned, and the name of the sheriff is used merely as a trustee, he is in effect a stranger. He was an instrument of the law, and had no motive to falsify; for had there been in fact no sale, it would have been just as easy for him to exonerate himself from further responsibility by returning the land unsold for want of bidders.

But the most important question is, whether an inquiry into the defects of the sale is barred by the acknowledgment of the deed. I had entertained a notion that this was settled in the affirmative by repeated decisions; but I am surprised to find how little foundation there is for it. The first case on the subject is *Duncan* v. *Robeson*, (2 *Yeates* 455) in which it was ruled at *Nisi Prius* that a sheriff's deed, acknowledged after ejectment brought, precludes no objection to the sale that might have been made at the time of acknowledgment; and the same thing was repeated in *Moorhead* v. *Pearce*, (*id.* 458) from which is to be inferred an opinion that some objections are proper for one occasion and some for another; but no classification was attempted or distinction drawn. Next came *Knight* v. *Morris*, (4 *Yeates* 341) in which a sheriff's deed had been acknowledged after objection made; yet a subsequent purchaser on another judgment, and in trust for the creditors, was allowed to show, on the trial of an ejectment, that the sale was collusive. Mr Justice Yeates, who ruled the point, and than whom no man was better acquainted with the practice and customs of the state, declared the principle of *res judicata* to be inapplicable to a case of the sort; that no more had been determined by the execution court than the admissibility of the deed to acknowledgment; that the overruling of the objections to it, gave the deed no greater validity or effect than if it had been acknowledged without opposition; and that the validity of sheriffs' sales had always been open to impeachment after acknowledgment, and left to rest on their original fairness. No judge has since directly expressed an opinion on the subject; but there are

cases to show that the practice mentioned by Justice Yeates has been continued. Such is *Burd* v. *Dansdale*, (2 *Binn.* 80) in which the purchaser's title under a deed regularly acknowledged was defeated by a subsequent purchaser under the judgment of one who was a lien creditor at the time of the sale, on the ground that the levy and inquisition had been set aside before the issuing of the *venditioni*. Now, though this principle of *res judicata* operates as an estoppel, and only between parties and privies, and though Mr Justice Yeates seemed to distinguish, in this respect, between the debtor and a judgment creditor, because it had not. then been established, as it has since, that a sale by any one creditor turns the land into money for the satisfaction of all, it being supposed that each could proceed against the land only for himself by selling it over again in the hands of the preceding vendee; yet it is now certain that judgment creditors are entitled to be heard in opposition to the confirmation of a sheriff's sale, and they are consequently privies. In *Burd* v. *Dansdale*, therefore, the plaintiff stood in the place of a judgment creditor, who, being a privy, would have been concluded by the principle of *res judicata*, had it been thought applicable to any one. So, in *Friedly* v. *Scheetz*, (9 *Serg. & Rawle* 156) it was ruled that a sheriff's sale cannot be objected to for want of title in the debtor; but no one thought of putting the decision on any supposed conclusiveness of the acknowledgment. In *Porter* v. *Neelan*, (4 *Yeates* 108) a plaintiff in ejectment, who rested his title on a sheriff's deed, was nonsuited, because the sale had been made without a *venditioni;* and in *Dunning* v. *Washmudt*, (2 *Yeates* 86) the recital in a sheriff's deed, was held not even *primâ facie* evidence of an authority to sell without producing the judgment. In these two cases, however, it does not clearly appear that the party making the objection had been privy to the sale, and they therefore may not be authority to the point; but in *Smull* v. *Jones*, (ante 128) an alleged fraud on the part of the sheriff's vendees was made a subject of inquiry without objection in an ejectment by the debtor. The cases on the other side prove very little. In *Murphy* v. *M'Cleary*, (3 *Yeates* 405) the court refused to hear evidence that the inquest had been mistaken in their condemnation, remarking that if they had refused to hear evidence of the yearly value, the proper remedy would have been an application to set the inquisition aside; but that the decision was not rested on any supposed conclusiveness of the acknowledgment, is evident from the fact that the court pronounced it inoperative and void, because it had been received at an adjourned court before the return day of the writ. The only case in which even a regular acknowledgment has been allowed to have any effect whatever, is *Stroble* v. *Smith*, (8 *Watts* 280), and there it was held only to raise a presumption that the proclamation required by the statute had been made. *Richter* v. *Fitzsimmons*, (4 *Watts* 251), on the authority of which

the judge ruled the cause, was a case of confirmation by the Orphans' Court, from whose decree an appeal lies to the Supreme Court; which differs it from the confirmation of a sheriff's sale without such appeal. Why should the summary judgment of the execution supplant the constitutional action of a jury on the facts, or the judgment of the dernier court on the law? The execution court may indeed award a feigned issue, but is not bound to do so; and did it refuse it, the losing party would be deprived of his constitutional franchise. But why suspend the act of confirmation in any case to await the slow and uncertain event of a collateral issue, when the matter can be more profitably tried in an issue formed in an action in the regular course. A collateral issue would decide nothing but the contested point, so that an ejectment would sometimes be necessary to put the party in possession; and thus we might have two actions instead of one. We have done much to mar the symmetry of our judicial proceedings by a too free use of this professional nostrum. It is a good thing in its place; but where it is resorted to unnecessarily, it introduces most admirable disorder. Better stick to the natural method. A fraud or defect in the sale may, perhaps, not be perceived in time for an objection to the acknowledgment; and to preclude an inquiry into it afterwards, would introduce a very short and severe judicial statute of limitations. Yet I do not say that the acknowledgment may not raise even a conclusive presumption of compliance with the requisitions of the law in regard of things to be done in the sale itself; but it surely ought not to preclude an inquiry into the authority which is the foundation of it. Here it turns out that the sheriff had, at the time of sale, no authority in his hands at all; and no subsequent confirmation can validate an act which was utterly void. We are of opinion, therefore, that the title did not pass by the sheriff's sale; and that the defendants were not estopped from showing it.

Judgment reversed, and *venire de novo* awarded.